33 F.3d 284
 RESOLUTION TRUST CORPORATION, As Receiver of Hill Financial, S.A.
v.
FOREST GROVE, INC.; Ronald Isenhart, a/k/a Ron W. Isenhart;
Delores A. Isenhart Forest Grove, Inc., Appellant
at No. 93-1944
Ronald Isenhart, a/k/a Ron W. Isenhart, Appellant at No. 93-1945
Delores A. Isenhart, Appellant at No. 93-1946.
 Nos. 93-1944, 93-1945 & 93-1946.
 United States Court of Appeals,
Third Circuit.
 Argued May 5, 1994.
Decided Aug. 26, 1994.
 
 Geoffrey L. Beauchamp, Michael J. Clement, (Argued) Kenneth O. Spang, III, Wisler, Pearlstine, Talone, Craig, Garrity & Potash, Blue Bell, PA, for appellants.
 Marjorie E. Greenfield, (Argued) Anderson, Greenfield & Dougherty, Philadelphia, PA, and Dennis S. Klein, Hughes, Hubbard & Reed, Washington, DC, and Kevin M. Crotty, Hughes, Hubbard & Reed, New York City, for Resolution Trust Corp., as Receiver of Hill Financial, S.A.
 PRESENT: SLOVITER, Chief Judge, HUTCHINSON, Circuit Judge, and DIAMOND, District Judge*
 OPINION OF THE COURT
 HUTCHINSON, Circuit Judge.
 
 
 1
 Appellants, Forest Grove, Inc. ("Forest Grove"), Ronald Isenhart ("Mr. Isenhart"), and Delores A. Isenhart ("Mrs. Isenhart") (collectively the "Isenharts"), appeal an order of the United States District Court for the Eastern District of Pennsylvania denying their motion for Relief from Judgment pursuant to Federal Rules of Civil Procedure 60 and 62. In that order, the district court refused to open or strike a judgment which appellee, the Resolution Trust Corporation ("RTC"), had confessed against Forest Grove, as principal debtor, and against the Isenharts pursuant to a surety agreement ("Surety Agreement") they had signed.
 
 
 2
 The district court held that opening the judgment confessed against Forest Grove and the Isenharts was not warranted because they had failed to state a meritorious defense. The district court found that Mr. Isenhart had knowingly and intelligently waived his constitutional right to procedural due process when he signed the Surety Agreement.[1] It also concluded that Mrs. Isenhart's execution of a power of attorney appointing her husband her attorney-in-fact gave him authority to sign the Surety Agreement for her and to authorize confession of judgment as provided in the Surety Agreement. Applying federal law rather than Pennsylvania law to determine the procedural requirements for a valid confession of judgment in federal court, it held that the judgment against Mrs. Isenhart could not be stricken as facially defective solely because she did not personally sign the Surety Agreement. It also concluded that Mrs. Isenhart had knowingly and intelligently waived her right to procedural due process under the Fourteenth Amendment to the United States Constitution. Finally, the district court rejected the common defense of Forest Grove and the Isenharts that the confession of judgment provisions in the bond and warrant executed by Forest Grove as principal and in the Surety Agreement by the Isenharts were unenforceable because there was a failure of consideration.
 
 
 3
 We will affirm the district court's order denying the motions of Forest Grove and Mr. Isenhart to open or strike the judgments; we will reverse the part of the district court's order that refused to strike or open the judgment against Mrs. Isenhart. We believe the district court applied an incorrect legal standard in refusing Mrs. Isenhart's motion, and its finding of fact that she had knowingly and intelligently waived her due process rights was clearly erroneous. Therefore, we conclude it abused its discretion when it refused to open or strike the judgment against Mrs. Isenhart based on its determination that Mrs. Isenhart's execution of the power of attorney gave her attorney-in-fact authority to confess judgment against her.
 
 I. Factual & Procedural History
 
 4
 Forest Grove is a Delaware corporation. Mr. Isenhart, Robert Quick and William Dougherty were Forest Grove's officers. In 1986, Forest Grove applied to Hill Financial Savings Association ("Hill") for a loan of $1,815,000.00 to finance construction of a mobile home park. Hill had already loaned millions of dollars to Forest Grove's officers. When Forest Grove submitted the 1986 loan application, Hill had over $9.5 million in loans outstanding to these officers. When Forest Grove applied for the 1986 loan from Hill, the mobile home park had fifty fully developed mobile home lots, forty-eight partially developed mobile home lots and sixty-nine undeveloped mobile home lots.
 
 
 5
 On October 1, 1986, Hill issued a commitment letter ("Commitment Letter") agreeing to lend Forest Grove the $1,815,000.00. It provided:
 
 
 6
 1. Loan--$1,815,000.00 (a maximum of $660,000.00 to be released at settlement). The balance is to be escrowed and disbursed as spaces are completed and leased up to achieve the "stabilized value."
 
 
 7
 Appendix ("App.") at 74.[2] The Commitment Letter also required each of Hill's officers to submit personal financial and income statements and required each of the officers and their spouses to guarantee the loan. All the property listed in Mr. Isenhart's financial statement was held jointly with Mrs. Isenhart. Hill and Forest Grove signed the Commitment Letter on October 15, 1986.
 
 
 8
 On November 12, 1986, Mrs. Isenhart executed a "General Power of Attorney" ("Power of Attorney"). Id. at 83. That Power of Attorney appointed Mr. Isenhart as her attorney-in-fact. In relevant part, it gave Mr. Isenhart the following authority:
 
 
 9
 1. To exercise the following powers with respect to any real estate or interest therein which may now or hereafter belong to me
 
 
 10
 * * * * * *
 
 
 11
 (f) To execute and deliver, extend, renew, replace or increase any mortgages affecting such real estate, and, for such purpose, to sign, seal, and deliver any notes or extension, renewal or other agreements necessary or useful to accomplish such purpose.
 
 
 12
 * * * * * *
 
 
 13
 5. To borrow any sum or sums of money, at such rates of interest and upon such terms, provisions and conditions as my said attorney may think proper, and for such purposes to sign, seal, acknowledge and deliver any notes, drafts, acceptances or other obligations, and to sign, seal, acknowledge and deliver mortgages on any of my real or personal property, or any other form of security my attorney may deem proper.
 
 
 14
 * * * * * *
 
 
 15
 8. To enter into, make, sign, execute, deliver, acknowledge and perform all contracts, agreements, writings or things that may in the opinion of my said attorney be necessary or proper to be done, including, but without limiting the generality of the foregoing, any agreements involving medical, maintenance, support, educational or emergency expenditures on behalf of myself or persons designated by my said attorney.
 
 
 16
 * * * * * *
 
 
 17
 20. Without in any manner limiting the foregoing, generally to do, execute and perform any other act, deed, matter or thing of every nature and kind whatsoever, that ought to be done, executed and performed, or that, in the opinion of my said attorney ought to be done, executed or performed in and about the premises, as fully and effectually as I could do if personally present.
 
 
 18
 Id. at 83-84. Mrs. Isenhart's Power of Attorney does not expressly authorize her attorney-in-fact, Mr. Isenhart, to enter into agreements containing a confession of judgment clause.
 
 
 19
 On the same day Mrs. Isenhart signed the Power of Attorney, Mr. Isenhart signed a Surety Agreement in compliance with the Commitment Letter's condition that Forest Grove's individual officers and their spouses guarantee the repayment of the loan from Hill. Mr. Isenhart signed the Surety Agreement on behalf of Mrs. Isenhart on a signature line beneath which her typed name appeared followed by the handwritten statement "BY RONALD ISENHART HER ATTORNEY-IN-FACT." Id. at 30.
 
 
 20
 The Surety Agreement is a four-page, fifteen paragraph document. Paragraph 7, on the third page, provides:
 
 
 21
 CONFESSION OF JUDGMENT. The Surety hereby irrevocably authorizes the Prothonotary or any attorney of any court of record to appear for and confess judgment against the Surety for the amount set forth under Principal Debtor's Liabilities to Hill with or without default by either Surety or Principal Debtor, with five percent (5%) thereof added as reasonable attorneys' commission with costs of suit and release of errors....
 
 
 22
 Id. at 29. The Surety Agreement, at paragraph 15, has a choice of law clause. It provides "All issues arising hereunder shall be governed and determined by the laws of the Commonwealth of Pennsylvania." Id. at 30.
 
 
 23
 Simultaneously with the execution of the Power of Attorney and the Surety Agreement, Forest Grove signed a Bond and Warrant evidencing the terms of its obligation to repay the loan. The Bond and Warrant is three pages in length and incorporates the terms and conditions of the Commitment Letter. On the last page, the Bond and Warrant also has a confession of judgment clause. It provides:
 
 
 24
 AND FURTHER, OBLIGOR HEREBY AUTHORIZES AND EMPOWERS THE PROTHONOTARY, CLERK OR ANY ATTORNEY OF ANY COURT OF RECORD OF THE COMMONWEALTH OF PENNSYLVANIA, THE STATE OF DELAWARE, OR ELSEWHERE, TO APPEAR FOR OBLIGOR AND, WITH OR WITHOUT A DECLARATION FILED, TO CONFESS OR ENTER A JUDGMENT IN THE NAME OF AND AGAINST OBLIGOR AND IN FAVOR OF OBLIGEE, FOR THE ORIGINAL PRINCIPAL SUM ABOVE-MENTIONED WITH COSTS OF SUIT, AND A FULL RELEASE OF ALL ERRORS. AND OBLIGOR HEREBY WAIVES AND RELEASES ANY BENEFIT OR ADVANTAGE OF ANY STAY OR SETTING ASIDE OF EXECUTION OR OTHER PROCESS, OF ALL LAWS AND RULES NOW IN FORCE, OR THAT MAY BE ENACTED, ADOPTED, OR PROMULGATED, EXEMPTING PROPERTY EITHER REAL OR PERSONAL, OR THE PROCEEDS THEREOF, FROM LEVY AND SALE UNDER ANY EXECUTION THAT MAY BE ISSUED FOR THE COLLECTION OF THE SAID JUDGMENT.
 
 
 25
 Id. at 25. The capitalization of this paragraph distinguishes it from the rest of the text. Both Robert Quick and Mr. Isenhart signed this document on behalf of Forest Grove. It was not signed by any of the officers or their spouses individually.
 
 
 26
 Hill collected commitment fees from Forest Grove based on Hill's total loan commitment of $1,815,000.00, but it only advanced Forest Grove approximately $1,210,000.00. After May 1988, Hill made no further disbursements despite Forest Grove's 1988 request that Hill disburse the remaining funds so Forest Grove could complete the mobile home park as planned. Forest Grove also alleges that Hill's final response to Forest Grove's repeated requests to disburse the rest of the funds committed was a flat no in the fall of 1989. After this express refusal, a local ordinance regulating on-site sewer systems in Kent County, Delaware, where Forest Grove's mobile home park was located, was changed. These changes prevented Forest Grove from completing the project as designed.
 
 
 27
 On October 12, 1989, the Office of Thrift Supervision ("OTS") declared Hill insolvent and appointed RTC as Hill's receiver. In 1989, Forest Grove failed to make the monthly payments due under the terms of the loan. On February 2, 1990, RTC notified Forest Grove that it was in default. On November 20, 1992, RTC, as Hill's receiver, filed a complaint asking the district court to permit it to confess judgment against Forest Grove, and Mr. and Mrs. Isenhart. On November 25, 1992, the district court granted RTC's request for relief and entered judgment by confession against Forest Grove and Mr. and Mrs. Isenhart.
 
 
 28
 On January 12, 1993, Forest Grove and the Isenharts filed a Federal Rule of Civil Procedure 60/62[3] motion seeking relief from the confession of judgment. In their motion, Forest Grove and the Isenharts asked the court to strike or open the November 25, 1992 judgment. By order entered September 9, 1993, the district court denied the motion. This timely appeal followed.
 
 II. Jurisdiction & Standard of Review
 
 29
 The district court had subject matter jurisdiction over this case under 12 U.S.C.A. Sec. 1441a(l )(1). It provides:
 
 
 30
 Notwithstanding any other provision of law, any civil action, suit, or proceeding to which the [RTC] is a party shall be deemed to arise under the laws of the United States, and the United States district courts shall have original jurisdiction over such action, suit, or proceeding.
 
 
 31
 12 U.S.C.A. Sec. 1441a(l )(1) (West Supp.1994). We have appellate jurisdiction over the final order of the district court denying the debtors' motion to strike or open the judgments confessed against them pursuant to 28 U.S.C.A. Sec. 1291 (West 1993).
 
 
 32
 Federal Rule of Civil Procedure 60(b) governs a motion to open or strike a judgment entered by confession in a federal court. See Central W. Rental Co. v. Horizon Leasing, 967 F.2d 832, 836 (3d Cir.1992). We review a district court's denial of a Rule 60(b) motion for abuse of discretion. Id.; see also Lasky v. Continental Prods. Corp., 804 F.2d 250, 256 (3d Cir.1986). We exercise plenary review, however, over the district court's choice of the standards to be used in exercising such discretion. Cf. Grode v. Mutual Fire, Marine and Inland Ins. Co., 8 F.3d 953, 957 (3d Cir.1993) ("In reviewing the district court's abstention, the underlying legal questions are subject to plenary review, but the decision to abstain is reviewed for an abuse of discretion.") We examine any factual findings the district court relies on to see whether they are clearly erroneous. See United States v. Pozsgai, 999 F.2d 719, 724 n. 5 (3d Cir.1993), cert. denied, --- U.S. ----, 114 S.Ct. 1052, 127 L.Ed.2d 373 (1994).
 
 III. Analysis
 A. Applicable Substantive Law
 
 33
 We consider first Forest Grove's and the Isenharts' contention that the district court erred when it applied federal common law to this case instead of Pennsylvania substantive law. We have recognized that "[p]rocedurally, a motion to open or strike a judgment entered by confession in a federal court is governed by Rule 60(b)." Central W. Rental Co., 967 F.2d at 836 (citations omitted). We have also stated that in the analogous context of a motion to set aside a default judgment under Rule 60(b), the proper inquiry is:
 
 
 34
 whether vacating the ... judgment will visit prejudice on the plaintiff, whether the defendant has a meritorious defense, and whether the default was the result of the defendant's culpable conduct. The "threshold question" is whether the defendant has alleged facts which, if established at trial, would constitute a meritorious defense to the cause of action.
 
 
 35
 Id. (citations and internal quotation omitted). Thus, in Central W. Rental Co., we considered whether a confession of judgment should be opened under Rule 60(b) by looking at these factors. Id.
 
 
 36
 In Central W. Rental Co., a vehicle lessor and the lessor's guarantors appealed the district court's refusal to grant their Rule 60(b) motion for relief from a confessed judgment the Federal Deposit Insurance Corporation ("FDIC") had obtained against them. Id. at 833-34. FDIC confessed judgment against the guarantors under a guaranty agreement which secured financing for their leasing business. Id. at 834. FDIC sought to recover the residual value of numerous leased vehicles that had been repossessed and sold at a loss. Id. at 835. As a defense, the lessor and its guarantors argued they were entitled to notice of the sale of the repossessed vehicles. Id. at 835, 836. We first concluded that the guarantors' defense that both they and the lessor were entitled to notice, if proven, would have merit. Id. at 836. We then determined that FDIC's claim in confession of judgment arose out of 12 U.S.C.A. Sec. 1819(b)(2)(A), a federal statute. From this, we concluded that federal common law, as opposed to Pennsylvania state law, controlled the case before us. Id. at 836-37; see also RTC v. Choudhury, Civ.A. No. 92-2046, 1992 WL 163299, at * 3 (E.D.Pa. July 7, 1992) ("Any civil action in which the FDIC or the ... FSLIC [or RTC], is a party is deemed to rise [sic] under federal law. Thus federal law controls whether the [defendants may] assert [a particular] defense....") (citing Adams v. Madison Realty & Dev., Inc., 937 F.2d 845, 855 (3d Cir.1991)).
 
 
 37
 Forest Grove and the Isenharts nevertheless argue that the district court erred when it relied on Central W. Rental Co. and applied federal law, as opposed to state law. They assert that Central W. Rental Co. is distinguishable because RTC's action to confess judgment in Central W. Rental Co. was predicated on section 1819(b)(2)(A), not section 1441a(l )(1) as here. We reject this argument. The text of section 1819(b)(2)(A) is almost identical to that of section 1441a(l )(1). Compare 12 U.S.C.A. Sec. 1441a(l )(1) ("Notwithstanding any other provision of law, any civil action, suit, or proceeding to which the [RTC] is a party shall be deemed to arise under the laws of the United States, and the United States district courts shall have original jurisdiction over such action, suit, or proceeding.") with 12 U.S.C.A. Sec. 1819(b)(2)(A) (West 1989) ("Except as provided ... all suits of a civil nature at common law or in equity to which the [FDIC], in any capacity, is a party shall be deemed to arise under the laws of the United States.").
 
 
 38
 Recent United States Supreme Court decisions concerning the use of federal, as opposed to state, law require more careful consideration. Forest Grove and the Isenharts argue Kamen v. Kemper Financial Services, Inc., 500 U.S. 90, 111 S.Ct. 1711, 114 L.Ed.2d 152 (1991) supports their contention that Pennsylvania law should apply. Kamen was a shareholder's derivative suit against an investment adviser on a theory that the adviser had issued a materially misleading proxy statement in violation of the Investment Company Act of 1940 ("ICA"), 15 U.S.C.A. Secs. 80a-1 to 80b-21 (West 1981 & Supp.1994). The Supreme Court held that the demand futility exception as defined by the law of the state of incorporation applied to derivative actions brought under the ICA. It first concluded that "the contours of the demand requirement in a derivative action founded on the ICA are governed by federal law. Because the ICA is a federal statute, any common law rule necessary to effectuate a private cause of action under that statute is necessarily federal in character." Kamen, 500 U.S. at 97, 111 S.Ct. at 1717 (emphasis in original). Nevertheless, the Supreme Court went on to state:
 
 
 39
 It does not follow, however, that the content of such a rule must be wholly the product of a federal court's own devising. Our cases indicate that a court should endeavor to fill the interstices of federal remedial schemes with uniform federal rules only when the scheme in question evidences a distinct need for nationwide legal standards or when express provisions in analogous statutory schemes embody congressional policy choices readily applicable to the matter at hand[.] Otherwise, we have indicated that federal courts should "incorporat[e] [state law] as the federal rule of decision," unless "application of [the particular] state law [in question] would frustrate specific objectives of the federal programs." The presumption that state law should be incorporated into federal common law is particularly strong in areas in which private parties have entered legal relationships with the expectation that their rights and obligations would be governed by state-law standards.
 
 
 40
 Id. (citations omitted). Accordingly, the law of the state of incorporation was used to define the demand futility exception. Id. 500 U.S. at 107-09, 111 S.Ct. at 1722-23.
 
 
 41
 This past term the Supreme Court addressed whether federal or state law governed the tort liability of parties sued by FDIC, as receiver of a federally insured bank. See O'Melveny & Myers v. Federal Deposit Ins. Corp., --- U.S. ----, 114 S.Ct. 2048, 129 L.Ed.2d 67 (1994). There, FDIC sued a law firm that had provided services to a federally insured bank, alleging that the law firm had acted negligently and breached its fiduciary duty to the bank. Id. at ---- - ----, 114 S.Ct. at 2051-52. FDIC contended that federal common law, as opposed to state law, determined whether the law firm's defenses were valid. Id. at ----, 114 S.Ct. at 2052.
 
 
 42
 The Supreme Court started by revisiting Erie R. Co. v. Tompkins, 304 U.S. 64, 78, 58 S.Ct. 817, 822, 82 L.Ed. 1188 (1938), stating " 'There is no federal general common law.' " O'Melveny & Myers, --- U.S. at ----, 114 S.Ct. at 2053. It went on to address FDIC's reliance on a statement in United States v. Kimbell Foods, Inc., 440 U.S. 715, 726, 99 S.Ct. 1448, 1457, 59 L.Ed.2d 711 (1979) that "federal law governs questions involving the rights of the United States arising under nationwide federal programs."[4] The Supreme Court reasoned that FDIC is not the United States. O'Melveny & Myers, --- U.S. at ----, 114 S.Ct. at 2053. As a receiver, under 12 U.S.C.A. Sec. 1821(d)(2)(A)(i) FDIC " 'steps into the shoes' of the failed S & L, obtaining the rights 'of the insured depository institution' that existed prior to receivership." Id. at ----, 114 S.Ct. at 2054. It then stated that there must be a " 'significant conflict between some federal policy or interest and the use of state law' " to warrant creation of a special federal rule. Id. at ----, 114 S.Ct. at 2055 (quoting Wallis v. Pan Am. Petroleum Corp., 384 U.S. 63, 68, 86 S.Ct. 1301, 1304, 16 L.Ed.2d 369 (1966)). Referring to its decision in Kamen, the Supreme Court held:
 
 
 43
 Our cases uniformly require the existence of such a conflict as a precondition for recognition of a federal rule of decision. Not only the permissibility but also the scope of judicial displacement of state rules turns upon such a conflict. What is fatal to [FDIC's] position in the present case is that it has identified no significant conflict with an identifiable federal policy or interest. There is not even at stake that most generic (and lightly invoked) of alleged federal interests, the interest in uniformity. The rules of decision at issue here do not govern the primary conduct of the United States or any of its agents or contractors, but affect only the FDIC's rights and liabilities, as receiver, with respect to primary conduct on the part of private actors that has already occurred. Uniformity of law might facilitate the FDIC's nationwide litigation of these suits, eliminating state-by-state research and reducing uncertainty--but if the avoidance of those ordinary consequences qualified as an identifiable federal interest, we would be awash in "federal common-law" rules.
 
 
 44
 Id. (emphasis in original) (citations omitted). The Supreme Court concluded that state law governed, noting "this is not one of those extraordinary cases in which the judicial creation of a federal rule of decision is warranted." Id. at ----, 114 S.Ct. at 2056.
 
 
 45
 These recent pronouncements of the Supreme Court on the advisability of fashioning federal law in areas traditionally governed by state law support Forest Grove's and the Isenharts' position that Pennsylvania law governs the substantive aspects of their motion to strike or open the judgment RTC had confessed against them. Nevertheless, neither Central W. Rental Co. nor Adams v. Madison Realty & Development, Inc., 937 F.2d 845, 855 (3d Cir.1991) have been directly overruled, and this panel is therefore reluctant to conclude that the district court erred in applying federal common law instead of state law to its determination of whether Forest Grove or the Isenharts asserted a meritorious defense. Cf. Hammond v. Commonwealth Mortgage Corp. of Am. (In re Hammond), 27 F.3d 52, 57-58 (3d Cir.1994). Moreover, there are two reasons why it is unnecessary for us to reach that legal question here. First, both parties concede that the result is the same under either Pennsylvania or federal common law and the district court relied alternately on Pennsylvania and federal law in concluding that the Isenharts' and Forest Grove's defense of failure of consideration was not meritorious. In addition, it seems clear to us that the issue whether the confession of judgment violated Mrs. Isenhart's due process rights is a question of federal law regardless of whether state law would generally govern the question of meritorious defenses in an action brought by RTC or FDIC. See Jordan v. Fox, Rothschild, O'Brien & Frankel, 20 F.3d 1250, 1273 (3d Cir.1994) (citing Brookhart v. Janis, 384 U.S. 1, 4, 86 S.Ct. 1245, 1246-47, 16 L.Ed.2d 314 (1966)). Thus, we hold that any error the district court may have made in using federal law as the standard for determining whether Forest Grove or the Isenharts had alleged a meritorious defense that would entitle them to open the judgment RTC had confessed against them is immaterial. Whether it used correct principles of applicable law in exercising its discretion to open the judgments, however, is a question yet to be considered.
 
 B. Failure of Consideration Defense
 
 46
 The Isenharts and Forest Grove contend the district court erred when it determined that Hill had not breached the loan agreement by refusing to disburse all the funds the Commitment Letter covered. They argue that Hill's failure to remit the full $1.8 million it promised was a failure of consideration, a meritorious defense which should have led the district court to open the judgments confessed against them.
 
 
 47
 The district court recognized that the Commitment Letter governed Hill's obligation to disburse funds and that it required Hill to disburse money " 'as spaces are completed and leased.' " Resolution Trust Corp. v. Forest Grove, Inc., Civ.A. No. 92-6707, slip op. at 9, 1993 WL 349429 (E.D.Pa. September 8, 1993). It concluded, however, there was no evidence that Hill had breached this promise by refusing to disburse funds before spaces were completed. The district court also concluded that the Isenharts had received consideration for executing the Surety Agreement when Hill promised to lend Forest Grove $1.8 million under the terms and conditions of the Commitment Letter. In the alternative, it held that Forest Grove and the Isenharts were precluded from asserting a lack of consideration defense against RTC under the D'Oench Duhme doctrine. See D'Oench, Duhme & Co. v. FDIC, 315 U.S. 447, 459-60, 62 S.Ct. 676, 680-81, 86 L.Ed. 956 (1942).
 
 
 48
 Forest Grove and the Isenharts argue that the Commitment Letter set forth no express, unambiguous guidelines for distribution of funds and that the district court incorrectly construed the commitment's terms concerning completion of mobile home lots and distribution of funds. They contend that this construction is contrary to Pennsylvania law which requires an event affecting a promisor's obligation to be expressly identified as a condition precedent before it will be so treated. See West Dev. Group, Ltd. v. Horizon Fin., F.A., 405 Pa.Super. 190, 592 A.2d 72, 76 (1991).[5]
 
 
 49
 Forest Grove and the Isenharts assert that all parties contemplated that Hill would make disbursements as necessary to fund completion of the various sections of the mobile home development. They point to Forest Grove's up-front payment of the full commitment fee in support of this contention. Thus, Forest Grove and the Isenharts assert that the parties' intentions and the terms of the Commitment Letter require Hill to fund Section III of the project upon the completion of Section II and that there was a failure of consideration resulting from its failure to do so in breach of the terms of the Commitment Letter.
 
 
 50
 Failure of consideration is a defense that arises when "there is a contract when the agreement is made, but because of some supervening cause, the promised performance fails." 1 Samuel Williston & Walter H.E. Jaeger, A Treatise on the Law of Contracts Sec. 119A, at 490 (3d ed. 1957). According to Williston:
 
 
 51
 Failure of consideration should be regarded as a defense, both substantively and procedurally, and the burden of proof, both as to going forward with the evidence and in the ultimate sense, should be upon the defendant.
 
 
 52
 Id. Sec. 199A, at 490 n. 5. "Failure of consideration goes to the heart of any claim based on an agreement and is thus always available as a defense to that claim." M.N.C. Corp. v. Mount Lebanon Medical Ctr., Inc., 510 Pa. 490, 509 A.2d 1256, 1259 (1986) (emphasis in original). "Failure of consideration occurs when the consideration bargained for does not pass, in whole or in part, to the promisor." McGuire v. Schneider, Inc., 368 Pa.Super. 344, 534 A.2d 115, 118 (1987), aff'd without opinion, 519 Pa. 439, 548 A.2d 1223 (1988) (per curiam).
 
 
 53
 Failure of consideration is a meritorious defense for which a confessed judgment can be opened. In this case, however, we are unable to hold that the district court abused its discretion when it concluded that there was no failure of consideration. We agree with the district court that Hill's promise to lend money to Forest Grove, a corporation the Isenharts owned, was sufficient consideration for the Surety Agreement. See Flemister v. United Bonding Ins. Co., 122 Ga.App. 422, 177 S.E.2d 182, 184 (1970); Miners' State Bank v. Auksztokalnis, 283 Pa. 18, 128 A. 726, 728 (1925); Whitten v. Alling & Cory Co., 526 S.W.2d 245, 248 (Tex.Civ.App.1975).
 
 
 54
 We also think that the interpretation Forest Grove and the Isenharts seek to put on the language of the Commitment Letter concerning disbursement of funds ignores the letter's plain language. It states that Hill was to disburse funds "as spaces are completed and leased up." App. at 74. We do not believe this is ambiguous; nor do we think that the record could support a finding that Hill breached this part of the agreement. Thus, we conclude that Forest Grove and the Isenharts have failed to point to facts sufficient to support their allegation that the confessed judgment should fail for lack of consideration.[6] We thus affirm the district court's decision to deny their motion to open or strike the confessed judgment on this ground.
 
 
 55
 C. Due Process and Validity of Confession as to Mrs.
 
 Isenhart
 
 56
 Mrs. Isenhart separately contends that the district court erred when it refused to grant her motion to strike or open the confessed judgment against her. She contends that the district court erred in concluding that the Power of Attorney which she executed gave her attorney-in-fact the power to execute documents on her behalf containing a confession of judgment clause. She also contends that the district court erred when it concluded that the confession of judgment did not violate her constitutional right to due process. Finally, she contends that the district court erred in failing to strike the confession of judgment because the complaint in confession of judgment did not attach any document that contained her signature and thus the judgment was invalid on its face.
 
 
 57
 In contending that the district court erred as a matter of law when it determined that Mrs. Isenhart's Power of Attorney granted Mr. Isenhart the power to execute, on her behalf, documents which contained a confession of judgment clause, Mrs. Isenhart argues that an attorney-in-fact does not have that power unless it is expressly set out in the Power of Attorney. Because the Power of Attorney which Mrs. Isenhart executed did not have an express provision authorizing confessions of judgment, she contends any confession of judgment obtained on the basis of the Power of Attorney must fail.
 
 The Restatement (Second) of Agency states:
 
 58
 It is inferred that one having authority to borrow has authority to do what is reasonably necessary in obtaining the money.... It does not, however, include authority to give security or to give a judgment note.
 
 
 59
 Restatement (Second) of Agency Sec. 75 cmt. b (1958). It is also the general rule that:
 
 
 60
 An agent may execute a warrant of attorney to confess judgment against his principal where he is expressly authorized to do so....
 
 
 61
 In the absence of express authority, the power of an agent to execute a warrant of attorney to confess judgment against his principal has generally not been inferred.... This rule that an agent ordinarily is without power to execute a warrant of attorney to confess judgment unless such authority is expressly conferred has been held applicable even where an agent was granted the power to borrow money for his principal or to execute notes, mortgages, bonds, or other securities to secure debts of his principal....
 
 
 62
 C.P. Jhong, Annotation, Agent's Authority to Execute Warrant of Attorney to Confess Judgment Against Principal, 92 A.L.R.2d 952, 953-54 (1963) (footnotes omitted).
 
 
 63
 In Armen v. Frederick, 59 Pa. D. & C. 115 (Beaver Co. 1947), a husband granted his wife a power of attorney. This power of attorney authorized her:
 
 
 64
 to do and perform all matters and things, transact all business, make, execute and acknowledge all contracts, orders, deeds, writings, assurances and instruments which may be requisite or proper to effectuate any matter or thing appertaining or belonging to me, and especially granting to her the power to apply for and renew my restaurant liquor license....
 
 
 65
 Id. at 116. The wife signed a note to borrow money on behalf of her husband who was stationed overseas in the military. It contained a confession of judgment clause. In considering the effect of the power of attorney, the trial court stated "[p]ermission to another to authorize confession of judgment must be expressed in unequivocal language." Id. at 125. The court concluded that the power of attorney did not include this type of authorization, and therefore struck the confessed judgment. Id.
 
 
 66
 Similarly, in Peoples Banking Co. v. Brumfield Hay & Grain Co., 172 Ohio St. 545, 179 N.E.2d 53 (1961), the Supreme Court of Ohio stated:
 
 
 67
 Although an agent with authority to borrow money may have authority to do what is reasonably necessary to obtain that money, including authority to give negotiable instruments in the usual form where required, such authority alone will not support a reasonable inference of authority to give any warrant of attorney to confess judgment.
 
 
 68
 Id. 179 N.E.2d at 55 (citing Restatement (Second) of Agency Sec. 75 cmt. b). The court held that "the authority of one to execute a warrant of attorney to confess judgment against another should not be recognized unless expressly conferred." Id.
 
 
 69
 We too think it is clear that an attorney-in-fact lacks the power to execute a warrant of attorney to confess judgment on behalf of his principal, unless the power is expressly given in the power of attorney. The Power of Attorney that Mrs. Isenhart executed does not have such a provision, and therefore Mr. Isenhart, as her attorney-in-fact, did not have any power to give Hill, or RTC as its successor, a warrant of attorney to confess judgment against Mrs. Isenhart. Accordingly, we hold that the district court erred when it refused to open or strike the confessed judgment as against Mrs. Isenhart.
 
 
 70
 Having concluded that the Power of Attorney did not give Mr. Isenhart the power to confess judgment against his wife, we decline to reach her other arguments, leaving them for the district court's initial consideration along with any other arguments she may properly raise.IV.
 
 
 71
 The district court's order denying Mr. Isenhart's and Forest Grove's motion to open or strike the confessed judgment on the grounds of failure of consideration will be affirmed. The district court's order refusing to open the judgment confessed against Mrs. Isenhart will be reversed and the case will be remanded to the district court for further proceedings consistent with this opinion. Each party shall bear its own costs.
 
 
 
 *
 Hon. Gustave Diamond, United States District Judge for the Western District of Pennsylvania, sitting by designation
 
 
 [1]
 On appeal, Mr. Isenhart does not contest the district court's holding that he knowingly and intelligently waived his rights to notice and hearing when he executed the Surety Agreement
 
 
 [2]
 All appendix references are to the "Appendix for Appellant" submitted by Mrs. Isenhart unless otherwise indicated
 
 
 [3]
 Federal Rule of Civil Procedure 60(b) provides in relevant part:
 On motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment, order, or proceeding for the following reasons: ... (6) any other reason justifying relief from the operation of the judgment.
 Fed.R.Civ.P. 60(b).
 Federal Rule of Civil Procedure 62(b) provides in relevant part:
 In its discretion and on such conditions for the security of the adverse party as are proper, the court may stay the execution of or any proceedings to enforce a judgment pending the disposition of ... a motion for relief from a judgment or order made pursuant to Rule 60....
 Fed.R.Civ.P. 62(b).
 
 
 [4]
 In Kimbell Foods, Inc., the Supreme Court set out the factors we should use for determining whether a uniform federal rule should be imposed on federal claims when Congress's intent is unclear. They are: (1) whether the issue requires a nationally uniform body of law; (2) whether application of state law would frustrate specific objectives of the federal programs; and (3) whether, and the extent to which, application of a federal rule would disrupt commercial relationships predicated on state law. Kimbell Foods, Inc., 440 U.S. at 728-29, 99 S.Ct. at 1458-59
 
 
 [5]
 We once again conclude that the question of applicable law is immaterial
 
 
 [6]
 Because we decide Forest Grove's and the Isenharts' claim on this ground, we do not reach the question of whether the district court correctly held that D'Oench, Duhme & Co. v. FDIC, 315 U.S. 447, 62 S.Ct. 676, 86 L.Ed. 956 (1942) precluded them from asserting a lack of consideration as a defense to the confession of judgment