656 A.2d 121

BANK OF AMERICA, NTSA as Trustee under that Certain Pooling and Servicing Agreement dates as of November 1, 1992 for RTC Commercial Mortgage Pass–Through Certificates Series 1992–C8

v.

COPLEY QU–WAYNE ASSOCIATES, a Pennsylvania Limited Partnership; Daniel Banks and Jacquelyn Banks, as Tenants by the Entireties, Robert Elwood and Beryl Elwood, as Tenants by the Entireties, Dale Criswell, Raymond Alexander, Leonard Goldman, Esther Goldman and Edward Hollin, all Trading as Brighton Court Associates, a Pennsylvania General Partnership; and Daniel Banks and Jacquelyn Banks, Jointly and Severally.

Appeal of: Raymond ALEXANDER, Individually and as General Partner t/a Brighton Court Associates.

Superior Court of Pennsylvania.

Argued Nov. 15, 1994.

Filed Feb. 17, 1995.

Reargument Denied April 25, 1995.

460

Noreen M. Walsh, Philadelphia, for appellant.

Karen L. Turner, Philadelphia, for Bank of America, appellee.

Before CIRILLO, TAMILIA and HOFFMAN, JJ.

TAMILIA, Judge:

Raymond Alexander appeals from the March 28, 1994 Order denying his petition to open and/or strike the $1,680,175.52 judgment entered against him as a 1% partner of defendant Brighton Court Associates (Brighton). Appellant argues this judgment was based upon an unauthorized exercise of authority by Brighton's managing partner, Daniel Banks (Banks).

Appellant (1%), along with Daniel and Jacquelyn Banks (67%), Robert and Beryl Elwood (11%), Dale Criswell (4%) and Edward Hollin (17%) are partners in Brighton. Their respective interests in the partnership are as indicated above. Banks is also general partner in defendant Copley Qu–Wayne Associates, a Pennsylvania limited partnership (Copley). On June 9, 1989, Banks, in his capacities as managing general partner of Brighton and sole general partner of Copley, executed a promissory note for 1.5 million dollars. In relation to the loan, Banks and his wife executed a guaranty and suretyship agreement which contained, among other provisions, a clause authorizing a judgment by confession in the

event of default. The makers thereafter defaulted on the loan and, on October 4, 1993, judgment by confession was entered against appellant and the other general partners of Brighton. Appellant's petition to open and/or strike was denied March 28, 1994, the trial court reasoning, in part, Banks' authority to execute the note was adequately reflected in the record via the partnership agreement and Banks' power of attorney. For the reasons which follow we disagree with the trial court and vacate the judgment entered against Raymond Alexander.[1]

A motion to strike judgment will not be granted unless the fatal defect claimed appears on the face of the record. *Dollar Bank v. Northwood Cheese Co.*, 431 Pa.Super. 541, 637 A.2d 309 (1994). A judgment by confession will be opened only when the petitioner acts promptly, alleges a meritorious defense and presents sufficient evidence of that defense so as to require submission of the issue to a jury. *Id.*

The pivotal issue before us is whether Banks had the authority, apparent or actual, to obligate Brighton to a 1.5 million dollar loan containing a confession of judgment clause. This very issue, not previously addressed by this Court,[2] was recently reviewed by the United States Court of Appeals from the Third Circuit, Eastern District, Pennsylvania. In *Resolution Trust Corp. v. Forest Grove Inc., Ronald & Delores Isenhart*, 33 F.3d 284 (3rd Cir.1994), a confessed judgment was entered by Resolution Trust against the defendants for repayment of a $1,815,000 loan. The commitment letter for the loan had been executed on October 15, 1986 by Mr. Isenhart, on behalf of Forest Grove, in his capacity as one of three Forest Grove officers. On November 12, 1986, Mrs. Isenhart executed a general power of attorney appointing Mr. Isenhart as her attorney-in-fact. The power of attorney, while giving her husband wide latitude with regard to the management of Forest Grove (mobile home park), did not expressly authorize him to enter into an agreement containing a confes-

1. Raymond Alexander is the only defendant party to this appeal.

2. The trial court's reliance on an unpublished memorandum by the United States District Court, factually distinguishable from the matter before us, is not controlling.

sion of judgment clause. On this same day, Mr. Isenhart signed a surety agreement in compliance with the lender's commitment letter condition that Forest Grove officers and their spouses would guarantee repayment of the loan. In his capacity as her attorney-in-fact, Mr. Isenhart signed on behalf of Mrs. Isenhart. The surety agreement contained, in addition to other provisions, the confession of judgment clause upon which judgment was entered. Simultaneously with the execution of the power of attorney and surety agreement, Mr. Isenhart, on behalf of Forest Grove, signed a bond and warrant document which also contained a confession of judgment clause. This documentation was not signed by any of the officers or their spouses as individuals.

Faced with these facts, the court found, *inter alia*, the power of attorney granted by Mrs. Isenhart to Mr. Isenhart did not give him the power to grant to appellee a warrant of attorney to confess judgment against Mrs. Isenhart. Therefore, the Court of Appeals found the District Court erred when it refused to open/strike the confessed judgment as against Mrs. Isenhart. The court's Order denying Forest Grove's and Mr. Isenhart's motion to open/strike the confessed judgment entered against them was, however, affirmed.

Appellant herein finds himself in precisely the same position as Mrs. Isenhart. The limited power of attorney executed by Alexander did not expressly grant to Banks the authority to enter an agreement containing a warrant of attorney to confess judgment clause. The *Isenhart* Court relied on the Restatement (Second) of Agency, a Beaver County case, and an Ohio Supreme Court case, in support of its opinion an agent cannot execute a warrant of attorney to confess judgment in the absence of the express authority to do so:

The Restatement (Second) of Agency states:

It is inferred that one having authority to borrow has authority to do what is reasonably necessary in obtaining the money. . . . It does not, however, include authority to give security or to give a judgment note.

Restatement (Second) of Agency § 75 cmt. b (1958). It is also the general rule that:

> An agent may execute a warrant of attorney to confess judgment against his principal where he is expressly authorized to do so....

> In the absence of express authority, the power of an agent to execute a warrant of attorney to confess judgment against his principal has generally not been inferred.... This rule that an agent ordinarily is without power to execute a warrant of attorney to confess judgment unless such authority is expressly conferred has been held applicable even where an agent was granted the power to borrow money for his principal or to execute notes, mortgages, bonds, or other securities to secure debts of his principal....

C.P. Jhong, Annotation, *Agent's Authority to Execute Warrant of Attorney to Confess Judgment Against Principal*, 92 A.L.R.2d 952, 953–54 (1963) (footnotes omitted).

In *Armen v. Frederick*, 59 Pa.D. & C. 115 (Beaver Co.1947), a husband granted his wife a power of attorney. This power of attorney authorized her:

> to do and perform all matters and things, transact all business, make, execute and acknowledge all contracts, orders, deeds, writings, assurances and instruments which may be requisite or proper to effectuate any matter or thing appertaining or belonging to me, and especially granting to her the power to apply for and renew my restaurant liquor license....

*Id.* at 116. The wife signed a note to borrow money on behalf of her husband who was stationed overseas in the military. It contained a confession of judgment clause. In considering the effect of the power of attorney, the trial court stated "[p]ermission to another to authorize confession of judgment must be expressed in unequivocal language." *Id.* at 125. The court concluded that the power of attorney did not include this type of authorization, and therefore struck the confessed judgment. *Id.*

Similarly, in *Peoples Banking Co. v. Brumfield Hay & Grain Co.*, [172 Ohio St. 545, 18 O.O.2d 88,] 179 N.E.2d 53 (Ohio 1961), the Supreme Court of Ohio stated:

> Although an agent with authority to borrow money may have authority to do what is reasonably necessary to obtain that money, including authority to give negotiable instruments in the usual form where required, such authority alone will not support a reasonable inference of authority to give any warrant of attorney to confess judgment.

*Id.* [179 N.E.2d] at 55 (citing Restatement (Second) of Agency § 75 cmt. b). The court held that "the authority of one to execute a warrant of attorney to confess judgment against another should not be recognized unless expressly conferred." *Id.*

> We too think it is clear that an attorney-in-fact lacks the power to execute a warrant of attorney to confess judgment on behalf of his principal, unless the power is expressly given in the power of attorney.

*Isenhart*, 33 F.3d at 293. We agree with the Court of Appeals' reasoning as it pertains to the power of attorney and apply it to the matter before us. Also, it is apparent had appellant's intent been to grant Banks full, unbridled authority to act in his stead in all matters, the document would not have been titled Limited Power of Attorney, and would not have specifically and exclusively identified Brighton Court Apartments. We make this observation noting appellant has averred, and Banks and Copley have not denied, the loan secured was not for Brighton's benefit but rather for the benefit of Copley, Banks' limited partnership which was admittedly in financial distress.

In further support of our decision, we look to section 8321 of the Uniform Partnership Act, **Partner agent of partnership as to partnership business.**

. . . . .

**(b) Absence of apparent authority.**—An act of a partner which is not apparently for the carrying on of the business

of the partnership in the usual way does not bind the partnership unless authorized by the other partners.

**(c) Limitations on authority of individual partners.—** Unless authorized by the other partners or unless they have abandoned the business, one or more but less than all the partners have no authority to:

(1) Assign the partnership property in trust for creditors or on the promise of the assignee to pay the debts of the partnership.

(2) Dispose of the goodwill of the business.

(3) Do any other act which would make it impossible to carry on the ordinary business of a partnership.

(4) Confess a judgment.

(5) Submit a partnership claim or liability to arbitration or reference.

15 Pa.C.S. § 8321(b) and (c). While part (b) generally dictates the acts of a partner in the ordinary course of business may not bind the partnership absent apparent authority, part (c) goes one step further to delineate those peculiar acts for which a partner must obtain express authority from all other partners before acting. Included in this limited list of extreme acts, potentially detrimental to the partnership and requiring full agreement from all partners is the authority to confess judgment. *See Mullen v. Slupe,* 360 Pa. 485, 62 A.2d 14 (1948). Reading the aforementioned statutes in conjunction with the partnership agreement buttresses our finding Banks was without authority to execute the note in question. The pertinent article from the partnership agreement states:

. . . . .

Article 5. *Management.*

5.1. All major policy decisions affecting the business of the Partnership, including, without limitation thereto, the time and place of distributions, necessary expenditures of any kind, the necessity, time and amount of additional capital contributions or other cash calls, if any, and decisions involving development, construction, loans, mortgages or other financing or refinancing, leases for all or any part of

the Partnership Property and improvements thereto, and sale or other disposition of the Partnership Property or any part thereof, shall be made by Daniel Banks and/or Jacquelyn Banks who shall act as the Partnership's managing partners (the "Managing Partners"). The Managing Partners jointly or individually are hereby authorized by the Partners to do the following:

(i) to employ or engage other persons to perform services for the Partnership, including persons, directly or indirectly, employed by, in a control relationship with, affiliated with or otherwise related to any Partner and to compensate such persons for their performance of such services;

(ii) to mortgage, encumber, lease (for periods which may exceed the term of the Partnership), sell, assign, transfer, grant options on (for periods which may exceed the term of the Partnership), exchange or otherwise dispose of the Partnership Property or a portion thereof and any interests therein;

(iii) to borrow money and issue evidence of indebtedness and to secure the same by mortgage, deed of trust, pledge or other lien or security interest;

(iv) to enter into and perform contracts and agreements of any kind necessary or desirable to the development and operation of the Partnership Property or business and in connection with any matters incidental or related thereto;

(v) to do anything which the Managing Partners may deem necessary or appropriate for the protection and preservation of the Partnership Property; to carry insurance for public liability and other coverage appropriate to the business of the Partnership in such amounts and of such types as the Managing Partners may determine;

(vi) to make and revoke any election permitted to the Partnership by any taxing authority in such manner as the Managing Partners, in their sole discretion, may decide; and

(vii) to compromise, settle or submit to arbitration and to institute, prosecute and defend any actions or claims in

favor of or against the Partnership or relating to its business.

5.2. Notwithstanding the Uniform Partnership Act of the Commonwealth of Pennsylvania, no Partner shall be considered an agent of the Partnership, and no act or signature of any Partner, whether or not apparently for carrying on in the usual way the business of the Partnership, shall bind the Partnership, unless the Partner so acting either possesses or has in fact received authority pursuant to this Agreement to act for the Partnership in the particular matter involved.

Section 5.2 denounces the power conferred on the partners individually by statute to act on behalf of the partnership in the ordinary course of business. That power was granted to the Bankses by section 5.1 of the partnership agreement which identifies those acts, arising in the ordinary course of business, for which Mr. and Mrs. Banks assumed responsibility. Subsection vii of paragraph 5.1 expressly grants Banks the authority to submit a claim to arbitration, one of the recognized, extreme instances identified by section 8321(c) of the Act requiring express authority by all partners. Accordingly, we can't help but believe that had the partners intended to vest Banks with the authority to confess judgment, a specific provision would have been drafted and included in the partnership agreement.

Lastly, equity demands reversal. It is apparent from the record Banks abused his position of trust with Brighton in an attempt to save Copley. Unfortunately, he was unsuccessful. Brighton, however, should not be made to suffer the same fate as Copley as a consequence of Banks' irresponsibility.

Based on the foregoing reasons of law and fact, we reverse the March 28, 1994 Order denying appellant's petition and vacate the October 4, 1993 judgment as entered against appellant, Raymond Alexander.

Order reversed.

Judgment vacated.

Jurisdiction relinquished.