

2005 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

3-3-2005

# In Re:PHP Healthcare

Precedential or Non-Precedential: Non-Precedential

Docket No. 03-3972

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2005

Recommended Citation

"In Re:PHP Healthcare " (2005). *2005 Decisions.* Paper 1485.
http://digitalcommons.law.villanova.edu/thirdcircuit_2005/1485

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 2005 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

<u>NOT PRECEDENTIAL</u>

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 03-3972
_____

IN RE:

PHP HEALTHCARE CORPORATION,

Debtor

PHP LIQUIDATING, LLC,

Appellant

v.

*CHARLES H. ROBBINS; RJB PARTNERS PROFUTURES FUND
MANAGEMENT, INC.; STROME HEDGE CAP LTD;
STROME PARTNERS LP; STROME OFFSHORE LTD;
STROME SUSKIND HEDGE CAP LP; LAKESHORE INTERNATIONAL LTD;
KENNETH L. STAUB; LISA I. GROVE-SAMUELSON TRUST B;
RACHAEL K. COLLINS TRUST B; J.F. GROVE III TRUST A;
EARLE E. GALES, JR.; DEERE PARK CAPITAL MANAGEMENT, LLC;
ELARA LTD; CANADIAN IMPERIAL HOLDINGS; SIL NOMINEES LTD;
BEAR STEARNS SECURITIES CORP.; WATT FAMILY PROPERTY;
FORTUNE FUND LTD; ROBERT CHARLES KETNER; KIRK WHILLOCK;
JUDY WILLOCK; OH SHARMA; BHAGYAWATI SHARMA; CALDWELL &
ORKIN MARKET OPPORTUNITY FUND #1; JILL BROOKS MILBERG;
DENNIS DECRET; TOM TETERS; MARY K. CARPENTER; ROBERT F.
CARPENTER; JOHN P. COLE; LINDA D. COLE; WARD T. BELL &
ASSOCIATES, INC. PROFIT SHARING PLAN; WILLIAM L. TODD; ALLEN
MENDLER; PAUL COLE; PAUL MANDRAGONA;
CARMELLA G. MANDRAGONA; TERRY W. HUNT; RANDALL A. KONSKER;
CAROL R. BOUNDS; MARY JERKINS; BERWIN C. JERKINS;
R2 INVESTMENTS; Q FUNDING LP; HARRY METHERIAN, JR.; JOLANA
METHERIAN; METHERIAN FAMILY LIVING TRUST; MARIA CALVERT;
OHIO STATE SYSTEMS SMALL 384; BIG CAPITAL PARTNERS LP; EXECUTIVE

NURSE HOME CARE, INC.; WALKER SMITH CAPITAL LP; JEANNE MARCARI; JOHN DOES 1-500; ABC CORPS 1-500; ROBERT KONSKER; PROFUTURES SPECIAL EQUITIES FUND LP

*(Amended pursuant to Court's 07/28/04 Order)

_____

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

Dist. Court Civil Action No. 01-236
District Judge:  The Honorable Joseph J. Farnan, Jr.

_____

Argued January 20, 2005

Before:  ALITO, McKEE, and SMITH, <u>Circuit</u> <u>Judges</u>

(Filed:  March 3, 2005)

GERALD H. GLINE (ARGUED)
Cole, Schotz, Meisel, Forman & Leonard, P.A.
25 Main Street, P.O. Box 800
Hackensack, New Jersey  07601-7015

NEAL J. LEVITSKY
Fox Rothschild
824 North Market Street
Suite 810
Wilmington, Delaware 19899-2323

*Counsel for Appellant*s

THOMAS J. ALLINGHAM II (ARGUED)
DARRYL A. PARSON
Skadden, Arps, Slate, Meagher & Flom LLP
One Rodney Square, P.O. Box 636
Wilmington, Delaware  19899-0636

-2-

MICHAEL WOOLEY (ARGUED)
Potter Anderson & Corroon LLP
Hercules Plaza, 6th Floor
1313 N. Market Street, P.O. Box 951
Wilmington, Delaware  19899-0951

THOMAS G. MACAULEY (ARGUED)
Zuckerman Spaeder LLP
919 Market Street
Suite 1705, P.O. Box 1028
Wilmington, Delaware  19899

LAURIE S. SILVERSTEIN
WILLIAM A. HAZELTINE
Potter, Anderson & Corroon
1313 North Market Street
6th Floor, P.O. Box 951
Wilmington, Delaware  19801

MICHAEL WOOLLEY
MARK D. KOTWICK
Seward & Kissel
One Battery Park Plaza
New York, New York 10004

ANDREW R. LEE
Jones, Walker, Waechter, Poitevent, Carrere &
Denegre
210 St. Charles Avenue, 50th Floor
New Orleans, Louisiana  70170

WILLIAM M. KELLEHER
Ballard, Spahr, Andrews & Ingersoll
919 North Market Street
Wilmington, Delaware 19801

THOMAS C. MARCONI
1813 N. Franklin Street
P.O. Box 1677
Wilmington, Delaware 19899

*Counsel for Appellees*

_____

OPINION

_____

PER CURIAM:

The various Defendants in this action all moved to dismiss the Amended Complaint dated April 4, 2002 ("the Amended Complaint") for failure to state a claim upon which relief can be granted. The District Court granted those Motions in several Orders and dismissed the Amended Complaint with prejudice. For the reasons set forth below, we affirm those Orders.

## I.

PHP Healthcare Corporation ("PHP" or "the Debtor"), a Delaware corporation, filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code on November 19, 1998. Plaintiff-Appellant PHP Liquidating LLC ("the Liquidating Company") was established on October 12, 1999, pursuant to the Second Amended Plan of Liquidation ("the Plan"), to liquidate the assets of PHP for the benefit of the Liquidating Company's members, the creditors of PHP. With exceptions not relevant here, the Liquidating Company is the assignee of all rights, titles, interests and causes of action that PHP possesses as the debtor-in-possession. As such, the Liquidating Company has the express power to investigate, pursue, compromise or dismiss any and all such causes of action. Pursuant to the Plan, creditors were also given the option to assign and transfer to the Liquidating Company their claims and causes of action. Many of

-4-

PHP's creditors assigned their claims to the Liquidating Company.

The Liquidating Company filed suit in federal district court in Delaware against certain stockholders and former stockholders of PHP, seeking to recover the consideration paid in a series of stock redemption transactions authorized by PHP's Board of Directors. Soon after the Liquidating Company filed its Amended Complaint, the Defendants moved to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). The District Court granted their various motions in three separate Orders and explained those Orders in two separate Opinions. The District Court did not say in so many words that it dismissed the Amended Complaint "with prejudice," but the import of the Opinions and Orders seem clear. Moreover, in the absence of a clear statement to the contrary, a dismissal pursuant to Rule 12(b)(6) should be presumed to be made with prejudice. See United States ex rel. Karvelas v. Melrose Wakefield Hospital, 360 F.2d 220, 241 (1st Cir. 2004) (stating First Circuit rule that "in the absence of a clear statement to the contrary, a dismissal pursuant to Fed R. Civ. P. 12(b)(6) is presumed to be with prejudice.") This appeal followed.

## II.

Defendant Robbins argues that Virginia law, not Delaware law, governs claims arising from his stock redemption transactions because the Stock Purchase Agreement between Robbins and PHP contains a Virginia choice of law provision. The Liquidating Company argues that Delaware law controls because the Stock Purchase Agreement is trumped by the "internal affairs" doctrine, which requires that the laws of the state of incorporation govern "matters peculiar to the relationships among or between the

-5-

corporation and its current officers, directors, and shareholders." See Edgar v. MITE Corp., 457 U.S. 624, 645 (1982).

When two states have a connection to a case and an issue arises on which the states' respective laws differ, a choice of law must be made. Because there is no "significant conflict between some federal policy or interest and the use of state law," we will not recognize a federal rule of decision. O'Melveny & Myers v. FDIC, 512 U.S. 79, 87-88 (1994) (internal quotation marks and citation omitted); see also Resolution Trust Corp. v. Forest Grove, Inc., 33 F.3d 284 (3d Cir. 1994) (discussing O'Melveny). Instead, we will adopt the choice of law rule of Delaware — the state in which the Bankruptcy Court resides. See In re Merritt Dredging Co., 839 F.2d 203, 206 (4th Cir.) (applying choice of law rules of state in which federal bankruptcy court resided), cert. denied, 487 U.S. 1236 (1988). Delaware recognizes the internal affairs doctrine. McDermott Inc. v. Lewis, 531 A.2d 206, 215 (Del. 1987). Thus the question presented is whether the current dispute is an "internal affair."

The Restatement (Second) of Conflict of Laws explains the doctrine by offering examples of internal affairs "which involve primarily a corporation's relationship to its shareholders":

> [S]teps taken in the course of the original incorporation, the election or appointment of directors and officers, the adoption of by-laws, the issuance of corporate shares, preemptive rights, the holding of directors' and shareholders' meetings, methods of voting including any requirement for cumulative voting, shareholders' rights to examine corporate records, charter and by-law amendments, mergers, consolidations and reorganizations and the reclassification of shares. Matters which may also affect the interests of the corporation's creditors include the issuance of bonds, the declaration and payment of dividends, loans by the corporation to directors, officers and shareholders, and the purchase and

-6-

redemption by the corporation of outstanding shares of its own stock.

Restatement (Second) of Conflict of Laws §302 cmt. a (1971) (emphasis added).  See also

Cohn v. Mishkoff Costello Co., 175 N.E. 529 (N.Y. 1931) (court refused to hear case

against Indiana corporation where plaintiffs claimed corporation was under a duty to

redeem their stock because such an issue was an internal affair of the corporation and thus

ought be decided by the state of incorporation); Miesse v. Seiberling Rubber Co., 35

N.Y.S.2d 504 (App. Div. 1942) (court refused to require a Delaware corporation, which

was being reorganized in Delaware, to redeem preferred stock in accordance with its

certificate of incorporation since such action involved internal affairs of corporation); In

re Integra Realty Resources, Inc., 198 B.R. 352 (Bankr. D. Colo. 1996) ("[T]he question

of unlawful dividends relates directly to the administration of corporate affairs.").  Some

courts have held that a stock redemption is not an internal affair where the redemption is

subject to a definitive contract between the corporation and one of its shareholders.  See

Borst v. East Coast Shipyards, Inc., 105 N.Y.S. 2d 228 (Sup. Ct.1951) (in action by

preferred stockholder against New Jersey corporation to recover redemption price of

preferred stock together with accumulated dividends, court held such action did not

involve matters pertaining to internal management of foreign corporation, and New York

court would assume jurisdiction).  Here, however, the contract at issue and the result of

this action may affect indirectly the rights of non-parties to the contract; it is alleged that

PHP violated Delaware law either because PHP had no surplus when it redeemed its

stock, or, in the alternative, because the redemption impaired PHP's capital.  For this

reason the redemptions at issue qualify as internal affairs of PHP.  See Lakeman Realty

-7-

Corp. v. Sunny Isles Ocean Beach Co., 160 N.Y.S.2d 947 (Sup. Ct. 1957) (suit for redemption of preferred stock and payment of accrued dividends to one stockholder might place Florida corporation under duty to all holders, which might impair capital or necessitate a change in the structure, which would involve the internal affairs of the corporation and thus should be regulated by the state of incorporation); Prescott v. Plant Industries, Inc., 88 F.R.D. 257 (S.D.N.Y. 1980) (citing Lakeman and discussing internal affairs doctrine in general).

Because PHP is a Delaware corporation and the Liquidating Company's dispute with Robbins falls within the internal affairs doctrine, Delaware law controls.

**III.**

In deciding a motion to dismiss under Rule 12(b)(6), we exercise plenary review. Doug Grant, Inc. v. Greate Bay Casino Corp., 232 F.3d 173, 183 (3d Cir. 2000). Our role is to assess the legal feasibility of the Amended Complaint, not to weigh the evidence offered in its support. Conley v. Gibson, 355 U.S. 41, 45-46 (1957). Accordingly, we accept as true all facts alleged in the Amended Complaint and draw all reasonable inferences in the Liquidating Company's favor. Sturm v. Clark, 835 F.2d 1009, 1011 (3d Cir. 1987). We also may consider facts of which judicial notice may properly be taken under Rule 201 of the Federal Rules of Evidence, such as stock prices on the New York Stock Exchange. In re NAHC, Inc. Securities Litigation, 306 F.3d 1314, 1331(3d Cir. 2002) (judicial notice of stock price data compiled by Dow Jones News service); Ieradi v. Mylan Lab., Inc., 230 F.3d 594, 600 n.3 (3d Cir. 2002) (judicial notice of stock prices reported by Quotron Chart Services). However, if it is clear that the Liquidating

Company will not be able to prove facts sufficient to support a valid legal claim, and thus further amendment would be futile, then the Amended Complaint may be dismissed.  See Hishon v. King & Spalding, 467 U.S. 69, 73 (1984); Lake v. Arnold, 232 F.3d 360, 373-374 (3d Cir. 2000).

## IV.

Count I of the Amended Complaint alleges that PHP violated Section 160(a)(1) of the Delaware General Corporation Law ("DGCL") either because PHP had no surplus when it redeemed its stock from the Defendants, or, in the alternative, because the redemption impaired PHP's capital.  The Liquidating Company seeks to recover from the Defendants, current and former shareholders of PHP, the proceeds of these allegedly illegal stock redemption transactions.  Because we are reviewing a motion to dismiss, we assume that the Liquidating Company's factual allegations are correct: one way or the other, PHP violated Section 160 when it purchased Defendants' shares.  Thus the issue presented is whether the Liquidating Company may sue Defendants for PHP's violation of Section 160.  We conclude that the Liquidating Company cannot sue, regardless of whether it asserts its rights as the assignee of the creditors or as the assignee of the debtor-in-possession.

As a creditor's assignee, the Liquidating Company's standing only extends as far as its creditor's standing, and an individual creditor of a debtor may not assert a general claim belonging to all creditors.  Board of Trs. of Teamsters Local 863 Pension Fund v. Foodtown, Inc., 296 F.3d 164, 169 (3d Cir. 2002) ("[O]nce a company or individual files for bankruptcy, creditors lack standing to assert claims that are 'property of the

-9-

estate.'")(citation omitted); <u>see</u> <u>also,</u> <u>e.g.</u>, St. Paul Fire & Marine Ins. Co. v. PepsiCo, Inc.,

884 F.2d 688, 701 (2d Cir. 1989) ("If a claim is a general one, with no particularized

injury arising from it, and if that claim could be brought by any creditor of the debtor, the

trustee is the proper person to assert the claim, and the creditors are bound by the outcome

of the trustee's action.").

If Section 160 creates a private right of action, it is a general right of action that

seeks to redress an injury common to all creditors.  Section 160 in its entirety reads as

follows:

> (a) Every corporation may purchase, redeem, receive, take or otherwise acquire, own and hold, sell, lend, exchange, transfer or otherwise dispose of, pledge, use and otherwise deal in and with its own shares; provided, however, that no corporation shall:
>
> > (1) Purchase or redeem its own shares of capital stock for cash or other property when the capital of the corporation is impaired or when such purchase or redemption would cause any impairment of the capital of the corporation, except that a corporation may purchase or redeem out of capital any of its own shares which are entitled upon any distribution of its assets, whether by dividend or in liquidation, to a preference over another class or series of its stock, or, if no shares entitled to such a preference are outstanding, any of its own shares, if such shares will be retired upon their acquisition and the capital of the corporation reduced in accordance with §§ 243 and 244 of this title.  Nothing in this subsection shall invalidate or otherwise affect a note, debenture or other obligation of a corporation given by it as consideration for its acquisition by purchase, redemption or exchange of its shares of stock if at the time such note, debenture or obligation was delivered by the corporation its capital was not then impaired or did not thereby become impaired;
> >
> > (2) Purchase, for more than the price at which they may then be redeemed, any of its shares which are redeemable at the option of the corporation; or
> >
> > (3) Redeem any of its shares unless their redemption is authorized by subsection (b) of § 151 of this title and then only in accordance with such section and the certificate of incorporation.

(b) Nothing in this section limits or affects a corporation's right to resell any of its shares theretofore purchased or redeemed out of surplus and which have not been retired, for such consideration as shall be fixed by the board of directors.

(c) Shares of its own capital stock belonging to the corporation or to another corporation, if a majority of the shares entitled to vote in the election of directors of such other corporation is held, directly or indirectly, by the corporation, shall neither be entitled to vote nor be counted for quorum purposes. Nothing in this section shall be construed as limiting the right of any corporation to vote stock, including but not limited to its own stock, held by it in a fiduciary capacity.

(d) Shares which have been called for redemption shall not be deemed to be outstanding shares for the purpose of voting or determining the total number of shares entitled to vote on any matter on and after the date on which written notice of redemption has been sent to holders thereof and a sum sufficient to redeem such shares has been irrevocably deposited or set aside to pay the redemption price to the holders of the shares upon surrender of certificates therefor.

Even if we assume for the sake of argument that the statute implicitly creates a private right of action for creditors, it certainly does not distinguish between creditors, or even mention reliance or specific damages. Moreover, the previous versions of Section 160 and the various amendments to it (in 1967, 1970, 1973, 1974, and 1996) do not reveal pertinent ambiguities or shades of meaning that contradict the initial reading. See 8 Del. C. 1953, § 160; 56 Del. Laws, c. 50 (1967); 57 Del. Laws, c. 649, § 1 (1970); 59 Del. Laws, c. 106, § 3 (1973); 59 Del. Laws, c. 437, § 9 (1974); 70 Del. Laws, c. 349, § 3 (1996). And at all events, the Liquidating Company does not allege reliance or specific harm; its claim is a general one which, if it can be brought, would be equally available to any creditor of the debtor. Thus, the Liquidating Company does not, as a creditor's assignee, have standing to assert its claim.

As the District Court observed, however, there is some indication that a debtor-in-possession or its assignee could sue certain stockholders under Section 174. Subsection

-11-

(c) provides that a director "against whom a claim is successfully asserted under [subsection(a)] is entitled" to bring suit against certain stockholders, and the way subsection (c) describes a director's right of action suggests that a corporation's assignee may bring suit against such stockholders too.  Subsection (c) states:

> Any director against whom a claim is successfully asserted under this section shall be entitled, to the extent of the amount paid by such director as a result of such claim, to be subrogated to the rights of the corporation against stockholders who received the dividend on, or assets for the sale or redemption of, their stock with knowledge of facts indicating that such dividend, stock purchase or redemption was unlawful under this chapter, in proportion to the amounts received by such stockholders respectively.

8 Del. C. § 174(c) (emphasis added).  On its face, this text does not "provide that anyone, apart from the director, can assert the rights of the corporation."  Barbara Black, Corporate Dividends and Stock Repurchases § 4.33 (2003).  One court, however, has ruled that a corporate right of action exists under Delaware law against any shareholders who knowingly received an unlawful dividend.  See In re Integra Realty Resources, Inc., 198 B.R. 352, 365 (Bankr. D. Colo. 1996).  This interpretation of Section 174 makes sense; it would be strange if a third-party who profited from an injury was liable to the victim, but only the person who inflicted that injury could vindicate the victim's rights.

But if Section 174 creates or recognizes a right of debtors-in-possession to sue stockholders who receive payments for unlawful stock redemptions, it does so only against those stockholders "with knowledge of facts indicating that such [ ] redemption was unlawful."

The Amended Complaint does not allege Defendants knew PHP's capital was impaired when they redeemed their stock, and at oral argument counsel for the

-12-

Liquidating Company admitted that his client probably <u>could not</u> allege Defendants knew. Thus Counsel was unable to represent that such an allegation would be made if further pleading were allowed. Accordingly, even if Section 174 does imply a right of action by debtors-in-possession or their assignees against shareholders who knowingly receive unlawful stock redemptions, Section 174 does not give <u>this</u> Plaintiff a cause of action against <u>these</u> Defendants. The Liquidating Company has indicated that it cannot allege its claim differently, and an implied remedy applicable to the present case as alleged would subvert the statutory scheme.

## V.

The only Defendants charged with Count II were ProFutures Special Equities Fund, L.P., ProFutures Fund Management, Inc., Charles H. Robbins ("Robbins"), the founder and former Chairman of PHP, and members of Robbins's family. After filing briefs in this appeal, the ProFutures entities settled with the Liquidating Company. Thus the only Defendants still in the action charged with Count II are Robbins and his family. Count II of the Amended Complaint asserts that the redemption transactions between PHP and the Robbins Family were fraudulent transfers of property under 11 U.S.C. § 548 and 6 Del. C. §1301, <u>et</u> <u>seq.</u> We need not discuss the provisions of the Delaware Fraudulent Transfer Act, 6 Del. C. §1301 <u>et</u> <u>seq.</u> (2002) because they are substantially the same as the relevant parts of the Bankruptcy Code. <u>Compare</u> 11 U.S.C. § 548 (2002) <u>with</u> 6 Del. C. §§ 1302 -1306 (2002).

To properly plead a fraudulent transfer claim against the Robbins Family, the Liquidating Company would have had to allege either, pursuant to Section 548(a)(1)(A),

-13-

that the debtor redeemed the stock with actual intent to defraud creditors or, pursuant to Section 548(a)(1)(B), that (i) PHP received less than a reasonably equivalent value for the stock and (ii) that PHP was insolvent on the date of the redemptions or was rendered insolvent by the redemptions. The Liquidating Company does not meet the requirements of Section 548(a)(1)(A) because it does not plead actual intent; the Liquidating Company does not meet the requirements of Section 548(a)(1)(B)(ii) because it does not plead that PHP received less than a reasonably equivalent value for the stock. Count II is therefore facially deficient with respect to the Robbins family.

The Liquidating Company claimed for the first time that PHP received less than reasonably equivalent value from the Robbins Family only in its brief in response to the family's motion to dismiss. While counsel may "clarify" a pleading through subsequent briefing, a lawyer's statement in a response brief is no substitute for adequately pleaded facts in a complaint, and a memorandum cannot provide allegations that are wholly absent from the Amended Complaint. Grayson v. Mayview State Hosp., 293 F.3d 103, 109 n.9 (3d Cir. 2002).

The Liquidating Company offered no allegation of fact in its Amended Complaint as to the value of the shares received by PHP except the market price information. This information only supports Robbins's position, for it is undisputed that the contemporaneous price of PHP's stock on the NYSE exceeded the consideration paid to the Robbins Family. In this context the District Court was right to conclude that the Liquidating Company had not properly pleaded its fraudulent transfer claim.

Admittedly, the District Court did not explain how its result complied with this

Circuit's procedure for evaluating whether reasonably equivalent value is exchanged in a particular transaction. It would have been better if the District Court had done so. In Mellon Bank v. The Official Committee of Unsecured Creditors of R.M.L., Inc. (In re R.M.L., Inc.), 92 F.3d 139 (3d Cir. 1996), we held that a court must "make an express factual determination as to whether the debtor received any value at all" from the challenged transaction, keeping in mind that "the price a debtor paid, in and of itself, reveals nothing about whether the debtor received something of actual 'value.'" Id. at 149. In that determination, "[t]he touchstone is whether the transaction conferred realizable commercial value on the debtor . . . ." Id. (emphasis omitted), quoting Mellon Bank, N.A. v. Metro Communications, Inc., 945 F.2d 635, 647 (3d Cir. 1991). Once that determination is made, if the court has concluded that the debtor did, in fact, receive something of actual value, then the court must then apply a "totality of the circumstances test" to evaluate whether the value received was reasonably equivalent to the value the debtor relinquished. Id. at 154. The "fair market value" of services rendered or goods purchased is part of the totality of the circumstances, but other things may be relevant as well, such as whether the debtor and the transferee had an arm's-length relationship at the time of the transaction and whether the transaction was conducted in good faith by the transferee. See id. at 149. The fair market value of services rendered or goods purchased is not, by itself, "conclusively determinative" of reasonably equivalent value. See id. at 150.

However, although the District Court did not explain how its decision conformed to the two-part RML test, the record below supports a decision to dismiss with prejudice

for at least two reasons. First, the Liquidating Company did not plead or even argue in its brief that the market was being manipulated at the time of the redemption, nor did it offer any other reason why the market price for PHP stock might have been inaccurate. Given that the Liquidating Company has already been granted leave to amend its complaint once, the Liquidating Company's failure suggests that it cannot prove facts sufficient to support a valid fraudulent conveyance claim. Second, counsel for the Liquidating Company admitted at oral argument that his client probably could not allege, in support of Count I of its complaint, that PHP's shareholders and former shareholders knew facts indicating their stock redemption was unlawful. Robbins and his family are charged with Count I, so this admission applies to them. An unlawful stock redemption is a redemption made while a company is insolvent, or a redemption that renders a company insolvent. If the Liquidating Company cannot allege that Robbins and his family knowingly received a redemption while PHP was insolvent, or a redemption that rendered PHP insolvent, it is hard to see how the Liquidating Company could allege that Robbins and his family entered into the redemption transactions in bad faith.

In this context we conclude that the stock the debtor redeemed from Robbins and his family for $16.75 per share had realizable commercial value, and that the lowest market price on the day of the transaction – $17.50 per share – was a fair measure of that value. PHP stock traded on the New York Stock Exchange, one of the most efficient capital markets in the world. In the absence of any evidence of manipulation or bad faith we are comfortable presuming that stock the New York Stock Exchange values at $17.50 per share is not only of some actual value, however small, but also of a value reasonably

-16-

equivalent to $17.50 per share, or, barring that, at least $16.75 per share.