Mancinelli v. Momentum Research, Inc., 2012 NCBC 4.

| | |
|---|---|
| STATE OF NORTH CAROLINA | IN THE GENERAL COURT OF JUSTICE |
| | SUPERIOR COURT DIVISION |
| COUNTY OF DURHAM | 09 CVS 1383 |

KAREN L. MANCINELLI,           )
          Plaintiff     )
                            )
       v.             )  **OPINION AND ORDER ON MOTION**
                            )    **FOR SUMMARY JUDGMENT**
MOMENTUM RESEARCH, INC.,    )
          Defendant   )

THIS CAUSE, designated a complex business case by Order of the Chief Justice of the North Carolina Supreme Court, pursuant to N.C. Gen. Stat. § 7A-45.4(b) (hereinafter, all references to the North Carolina General Statutes will be to "G.S."), and assigned to the undersigned Chief Special Superior Court Judge for Complex Business Cases, comes before the court upon Defendant's Motion for Summary Judgment (the "Motion"), pursuant to Rule 56, North Carolina Rules of Civil Procedure ("Rule(s)"); and

THE COURT, after considering the Motion, briefs in support of and opposition to the Motion, affidavits, other submissions of counsel and appropriate matters of record, CONCLUDES that the Motion should be GRANTED in part and DENIED in part, as reflected herein.

*Glenn, Mills, Fisher and Mahoney, PA, by Carlos E. Mahoney, Esq. for Plaintiff.*

*Jordan Price Wall Gray Jones & Carlton, PLLC, by Paul T. Flick, Esq. and Lori P. Jones, Esq. for Defendant.*

Jolly, Judge.

## PROCEDURAL BACKGROUND

[1]     On November 4, 2009, Plaintiff Karen L. Mancinelli ("Mancinelli") filed her amended Complaint, in which she alleges three (3) claims for relief ("Claim(s)"): First Claim (Breach of Contract – Employment Agreement), Second Claim (Breach of Contract – Shareholder Agreement or Pre-Incorporation Agreement) and Third Claim (Violations of the North Carolina Wage and Hour Act).

[2]     Defendant has answered timely and raised certain affirmative defenses. Defendant's Motion has been fully briefed and argued, and is ripe for determination.

## FACTUAL BACKGROUND

Unless otherwise indicated herein, the material facts reflected in paragraphs 3 through 31 of this Opinion and Order exist, are undisputed[1] and are pertinent to the issues raised by the Motion.

[3]     At times material to this action, Plaintiff was a Director of Program Management of Clinical Research and Trials ("Director of Program Management") with Defendant Momentum Research, Inc. ("Momentum"), a Delaware corporation that is duly licensed to conduct business in North Carolina.[2]

[4]     Momentum is engaged in the business of managing and directing clinical trials involving cardiovascular drugs and products.[3]

[5]     Gadi Cotter, M.D. ("Cotter"), at times material, was President and Chief Executive Officer of Momentum.[4]

---

[1] It is not proper for a trial court to make findings of fact in determining a motion for summary judgment under Rule 56. However, it is appropriate for a Rule 56 order to reflect material facts that the court concludes exist and are not disputed, and which support the legal conclusions with regard to summary judgment. *Hyde Ins. Agency v. Dixie Leasing Corp.*, 26 N.C. App. 138 (1975).

[2] Amd. Compl. ¶¶ 7, 2.

[3] *Id.* ¶ 3.

[4] *Id.* ¶ 8a.

[6]     Phillip W. Lemons, II ("Lemons"), at times material, was Vice President of Momentum.[5]

[7]     Beth D. Weatherly ("Weatherly"), at times material, was Vice President of Biometrics of Momentum.[6]

[8]     Michele Rund ("Rund"), at times material, was Director of Global Program Management of Momentum.[7]

[9]     Prior to joining Momentum, Plaintiff was employed by the Duke Clinical Research Institute ("DCRI") as a senior project leader in clinical trials.[8]

[10]    In or around late March 2007, Cotter, then also employed by DCRI, told Plaintiff that Cotter, Lemons, Weatherly and Rund were beginning Momentum and that they would like for Plaintiff to join them as an owner of Momentum.[9]  Plaintiff contends that Cotter offered her a fifteen percent (15%) ownership interest in Momentum.[10] Cotter also informed Plaintiff that if she agreed to join Momentum, she would be employed as a senior project manager and her starting salary would be the same as at DCRI.[11]

[11]    Plaintiff decided to leave DCRI and joined Momentum some time in April 2007.[12]  On April 9, 2007, Momentum was incorporated.[13]

[12]    On April 10, 2007, Momentum's Board of Directors met and issued a resolution (the "Resolution") that authorized Momentum's officers to sell and issue 520

---

[5] *Id.* ¶ 8b.
[6] *Id.* ¶ 8c.
[7] *Id.* ¶ 8d.
[8] *Id.* ¶ 13.
[9] *Id.* ¶ 20.
[10] *Id.* ¶ 21.
[11] *Id.* ¶ 23.
[12] *Id.* ¶ 25.
[13] *Id.* ¶ 29.

of the 1000 shares in the company for the purchase price of $.01 per share.[14] The Resolution authorized Momentum's Board to sell and issue ninety (90) of the 520 Momentum shares to Plaintiff for $.90, which amounted to fifteen percent (15%) of the total shares in the company.[15] Momentum also adopted bylaws during the April 10, 2007 meeting.[16]

[13]    Momentum contends that the directors subsequently reconsidered the immediate offering of stock and formally rescinded the Resolution on July 10, 2007.[17] Momentum alleges that the issuance and sale of stock was deferred to see how the company financially progressed before confirming the ownership structure.[18]

[14]    In early June 2007, Lemons asked Plaintiff to sign an employment agreement (the "Employment Agreement") setting forth the terms of her employment at Momentum.[19] Plaintiff signed and executed the Employment Agreement on May 30, 2007.[20] The Employment Agreement was for a one-year term beginning on June 1, 2007, and ending May 31, 2008.[21]

[15]    The Employment Agreement contains termination provisions for (a) cause, (b) without cause and (c) disability.[22] With regard to for cause termination, section 5(a) of the Employment Agreement provides in pertinent part:

> Termination by the Company for Cause. During Employee's employment with the Company, at any time, the Company may terminate this Employee's employment immediately and without prior notice if such termination is for "Cause." For

---

[14] *Id.* ¶ 32.
[15] *Id.* ¶ 33.
[16] *Id.* ¶ 35.
[17] Def. Mem. Law Supp. Mot. Summ. J. 7; G. Cotter Dep. 67-78.
[18] *Id.*
[19] *Id.* ¶ 48.
[20] *Id.* ¶ 50.
[21] *Id.* ¶ 52.
[22] Lemons Dep. Ex. 9.

purposes of this Agreement, "Cause" means: (i) Employee's gross negligence or willful and wanton misconduct which in either case results in material harm to the financial condition, business, reputation, assets, or prospects of the Company; (ii) Employee's fraud, misappropriation, embezzlement relating to the Company; (iii) Employee's commission of any felony or any other offense that results in an active sentence of imprisonment; (iv) Employee's failure or refusal to perform his or her job duties or other breach of a material term of this Agreement; (v) Employees failure to carry out directions (consistent with his/her position with the Company) of the Company's management or Board of Directors of the Company; and/or (vi) Employee's death. If the Company terminates Employee's employment for Cause at any time, the Company will pay Employee (or his/her heirs or successors) only for Employee's accrued base salary at the then-current rate through the termination date (payment for any accrued, unused paid time off will be paid in accordance with the Company's policies.)[23]

[16]    The termination without cause provision of the Employment Agreement,

section 5(b), provides in pertinent part:

If the Company terminates Employee's employment without Cause during the Initial Term, subject to Employee signing a release of claims in a form acceptable to the Company, the Company will: (i) until the earlier of the expiration of the Initial Term or until Employee accepts employment with a third party, continue paying Employee's then-current Base Salary; and (ii) until the earlier of the expiration of the Initial Term or until Employee has health insurance coverage provided by a third party, reimburse Employee for continued health insurance coverage under COBRA or applicable state law . . . .[24]

[17]    The termination due to disability provision of the Employment Agreement,

section 5(d), provides in pertinent part:

In the event that this Agreement is terminated due to Employee's disability (where disability means Employee's physical or mental inability to perform the essential functions of his/her position for ninety days or longer), subject to

---

[23] *Id.*
[24] *Id.*

> Employee signing a release of claims in a form acceptable to the Company, the Company will, until the earlier of three (3) months after termination or until Employee begins receiving disability insurance benefits . . . (i) continue paying Employee's Base Salary at the rate then in effect and (ii) reimburse Employee for continued health insurance coverage . . . . In addition, the Company will pay Employee for his/her accrued base salary at the then-current rate through the termination date . . . .[25]

[18]   The Employment Agreement did not address Plaintiff's contended ownership interest, and Lemons allegedly told Plaintiff that a separate shareholder's agreement ("Shareholder Agreement") would be drafted and presented to her at a later date.[26]

[19]   Plaintiff testified that in August 2007, Lemons submitted to her a document purported to be a Shareholder Agreement, explaining Plaintiff's ownership interest in Momentum.[27]   Plaintiff further testified that she signed the document and returned it to Lemons.[28]   Plaintiff never received a copy of the document she signed and is unable to produce a copy.

[20]   Momentum disputes whether the Shareholder Agreement actually existed. However, Plaintiff has propounded evidence that Lemons and Cotter sent subsequent e-mail messages that exist and which acknowledge that Plaintiff had a fifteen percent (15%) ownership interest in Momentum.[29]

[21]   On January 4, 2008, Plaintiff received a Raise Notification Letter (the "Letter") from Lemons which states:

---

[25] *Id.*
[26] Lemons Dep. 156-157.
[27] Amd. Compl. ¶ 58; Mancinelli Aff. ¶ 9; Mancinelli Dep. 31-32, 42, 48.
[28] Mancinelli Aff. ¶ 9; Mancinelli Dep. 31-32, 42, 48.
[29] Pl. Br. Resp. Def. Mot. Summ. J. 8, 23; G. Cotter Dep. Exs. 45, 47, 49; Weatherley Dep. Ex. 92.

Momentum Research, Inc. had a very successful 2007. Thanks to the hard work of our employees, it looks to be a great year in 2008. Because our employees are so valuable to us and are responsible for the company's success to date, we have decided to make a change in the best interest of our employees to show our appreciation for your work. As discussed in your individual meetings earlier this week, you are being given a raise to $160,000 beginning January 2008 based on a $130,000 base salary and a $30,000 bonus. As we are a privately held company, this raise is due to our current financial position and may be re-evaluated at any point based on the company's financial position. Your salary will need to be reviewed at least by the beginning of 2009 if not before that time.

We appreciate the hard work you put into making our organization successful. We hope this gesture shows our dedication to recognizing and acknowledging the contributions of our employees, and focusing on ways in which we can thank you for the company's growth.[30]

[22] The $30,000 bonus (the "Bonus") was to be paid in twelve (12) monthly installments of $2,500 rather than a lump sum at the end of the year.[31]

[23] Between November 20, 2007, and the end of February 2008, Plaintiff's son and ex-husband experienced severe health issues that caused Plaintiff stress and anguish.[32] Plaintiff contends that the stress over her family's health issues resulted in her mental and physical exhaustion.[33]

[24] Momentum excused Plaintiff from several job duties and allowed her to work from home the entire month of December 2007, to spend extra time with her son.[34]

---

[30] Lemons Dep. Ex. 18.
[31] Amd. Compl. ¶ 72.
[32] Id. ¶ 76.
[33] Id. ¶ 83.
[34] Mancinelli Dep. 76-77; Lemons Dep. 213-14; G. Cotter Dep. 271.

[25]    Beginning in mid-December 2007, there was a breakdown in communication between Plaintiff and her supervisors at Momentum regarding her work duties.[35]

[26]    On January 7, 2008, Plaintiff met with Cotter and Lemons.  After discussing Plaintiff's recent job performance and the strained communications between Plaintiff and Momentum, Plaintiff submitted a written request for medical leave on January 8, 2008.[36]

[27]    Shortly thereafter, Plaintiff withdrew her request for medical leave and continued to manage a reduced workload from January 8 until February 25, 2008.

[28]    In February 2008, a dispute arose between Cotter and Plaintiff regarding her communications with clients of Momentum.[37]  Plaintiff contends that Cotter admonished her conduct, which contributed to her suffering a nervous breakdown on or about February 23, 2008.[38]

[29]    On February 25, 2008, Plaintiff did not report to work and notified her supervisors of her decision to take an immediate and indefinite medical leave through a letter she had a friend deliver.[39]  The letter advised Momentum not to contact Plaintiff in any way, and that she would, at some indefinite point, be in touch.[40]

[30]    Prior to providing notice of leave, Plaintiff made no attempt to transition the project she was managing to other Momentum employees.[41]  Defendant contends

---

[35] Amd. Compl. ¶¶ 84-86; Weatherley Dep. 27-29; Lemons Dep. 71-77.
[36] Mancinelli Aff. ¶¶ 31-32, Lemons Dep. Ex. 23.
[37] Mancinelli Aff. ¶ 40; Def. Brief 13.
[38] Mancinelli Aff. ¶¶ 41-42; Mancinelli Dep. 125-28, 171.
[39] Amd. Compl. ¶¶ 81-82; Lemons Dep. 233-35; G. Cotter Dep. Ex. 79.
[40] Mancinelli Aff. ¶ 43; Lemons Dep. Ex. 78; Mancinelli Dep. 181-83.
[41] Def. Mem. Law Supp. Mot. Summ. J. 13-14; Lemons Dep. 167-72; Pl. Br. Resp. Def. Mot. Summ. J. 21.

that, as a result, it was left to handle a project for which it lacked information and was instructed not to contact the Plaintiff for information.[42]

[31]    On February 28, 2008, Momentum notified Plaintiff, via letter, that she was being terminated for cause effective February 25, 2008.[43]  Defendant paid Plaintiff an amount totaling $8,255[44] for the sixteen (16) days she worked in February 2008. Defendant deducted the $2,500 Bonus paid to Plaintiff in January from her final paycheck.[45]

<u>SUMMARY JUDGMENT</u>

[32]    Under Rule 56(c), summary judgment is to be rendered "forthwith" if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that upon the forecast of evidence there exists no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law. *Grayson v. High Point Dev. Ltd. P'ship*, 175 N.C. App. 786, 788 (2006).  The court views the evidence in the light most favorable to the nonmoving party. *Bruce-Terminix Co. v. Zurich Ins. Co.*, 130 N.C. App. 729, 733 (1998).

[33]    In support of its Motion, Defendant argues that as a matter of law it did not breach the Employment Agreement, alleged as a basis for Plaintiff's First Claim, because it had a right to terminate Plaintiff for cause due to her failure to follow directions, poor job performance and unexcused absences.[46]  Defendant also argues that even if Plaintiff was terminated without cause or due to a disability, she still would not be entitled to any contractual post-employment wages or benefits because she did

---

[42] Def. Mem. Law Supp. Mot. Summ. J. 13-14.
[43] Amd. Compl. ¶ 86.
[44] Answer ¶ 85.
[45] *Id.*
[46] Def. Mem. Supp. Mot. Summ. J. 15-16.

not sign a release of claims against Momentum, a condition precedent to such payments.[47]

[34]   Defendant further argues that as a matter of law it did not breach the Shareholder Agreement or any pre-incorporation agreement ("Pre-Incorporation Agreement"), alleged as a basis for Plaintiff's Second Claim, because Momentum's Board formally rescinded the resolution to issue stock during the July 10 and November 26, 2007 Board meetings and because there exists no written agreement evidencing any right of Plaintiff to acquire Momentum stock.  In the alternative, Defendant argues that even if Momentum's Board authorized the sale of stock to Plaintiff and executed an agreement for the purpose of selling stock, the terms of such agreement would require that any shares sold to Plaintiff could be repurchased by Momentum upon her termination.[48]

[35]   Defendant further argues that it did not violate the Wage and Hour Act, alleged as a basis for Plaintiff's Third Claim, when it deducted $2,500 from Plaintiff's final paycheck and refused to pay Plaintiff $27,500 – the remainder of her Bonus for the year 2008 – because Plaintiff forfeited her Bonus when she abandoned her position with Momentum.

[36]   Plaintiff argues in response that there is evidence before the court showing that she properly performed her duties as Director of Program Management, followed the directions of her supervisors and kept them up to date on the projects she managed.[49]  Plaintiff contends that Defendant did not have cause to terminate her

---

[47] *Id.* 17.
[48] *Id.* 19. Defendant cites no authority or evidentiary basis supporting its contention that Plaintiff's shares would have been repurchased upon termination of her employment.
[49] Pl. Br. Resp. Def. Mot. Summ. J. 20.

employment, and that she was improperly terminated due to disability because Defendant cannot establish that Plaintiff was unable to perform the functions of her position for ninety (90) days, as required by section 5(d) of the Employment Agreement.[50]

[37]    Plaintiff further argues that she has propounded admissible evidence establishing the existence of a written Shareholder Agreement issuing her fifteen percent (15%) of shares in Momentum, and that she also entered into an enforceable Pre-Incorporation Agreement whereby Momentum agreed to issue shares to her.[51]

[38]    Plaintiff also argues that Defendant violated the Wage and Hour Act by deducting $2,500 from her final paycheck because she had earned that amount for her work at Momentum and contributions to the company.[52]  Plaintiff contends that Defendant improperly refused to pay her the $27,500 remainder of her Bonus for 2008, for the same reasons.

## DISCUSSION

### First Claim (Breach of Contract – Employment Agreement)

[39]    It is undisputed that on May 30, 2007, Plaintiff and Defendant entered into an Employment Agreement for a one-year term ending May 31, 2008.[53]

[40]    Pursuant to the Employment Agreement, Defendant could terminate Plaintiff for cause, without cause or due to disability.[54]

---

[50] *Id.* 19.
[51] *Id.* 24-25.
[52] *Id.* 26-27.
[53] *Id.*; *see* Lemons Dep. Ex. 9.
[54] *Id.*

[41]    The court must decide whether there exist one or more genuine issues of material fact with respect to whether Defendant breached the Employment Agreement by terminating Plaintiff for cause.

[42]    The facts surrounding Plaintiff's job performance while at Momentum are disputed by both parties.  Defendant has set forth evidence showing Plaintiff refused to follow the directions of her direct supervisor, Cotter, and failed to meet required deadlines.[55]  Defendant also contends that despite specific instructions not to do so, Plaintiff engaged in one-on-one communications with clients.[56]  Plaintiff disputes these contentions and submits evidence showing she properly performed her duties as Director of Program Management and that her supervisors were impressed with her work.[57]

[43]    While there are genuine issues of fact regarding Plaintiff's job performance, it is undisputed that on February 25, 2008, Plaintiff abruptly left her position at Momentum.  Plaintiff took an immediate leave of absence, notifying her supervisors of this leave through a letter delivered by a friend of Plaintiff, which instructed Momentum not to contact her.[58]  Plaintiff failed to provide her supervisors with the status of the project on which she was working prior to her departure and refused to turn over information related to the project.[59]

[44]    The court CONCLUDES that Plaintiff's conduct in abandoning the project on which she was working and abruptly taking a leave of absence constituted sufficient

---

[55] G. Cotter Dep. 177-80, 196-201, Exs. 56, 62.
[56] *Id.*
[57] *See* Mancinelli Dep. Ex. 80.
[58] Lemons Dep. 233-35; G. Cotter Dep. Ex. 79; Mancinelli Aff. ¶ 43.
[59] Def. Mem. Law Supp. Mot. Summ. J. 13.

cause for Defendant to terminate Plaintiff under section 5(a) of the Employment Agreement.

[45] Because Defendant had sufficient cause to terminate Plaintiff under section 5(a), it was only obligated to pay Plaintiff's accrued base salary at the then-current rate through the termination date, February 25, 2008. Defendant paid Plaintiff her base salary for the days she worked in February.

[46] Accordingly, the court CONCLUDES that there exist no genuine issues of material fact with regard to whether Defendant breached the Employment Agreement, and with regard to Plaintiff's First Claim, Defendant's Motion should be GRANTED.

<u>Second Claim (Breach of Contract – Shareholder<br>Agreement or Pre-Incorporation Agreement)</u>

[47] The parties take different positions concerning whether and to what extent the laws of North Carolina or Delaware should apply to the facts of this matter.

[48] Defendant contends that because Momentum is a Delaware corporation, the court should apply Delaware law based on a choice of law concept commonly referred to as the "internal affairs doctrine."[60] Defendant apparently then would have

---

[60] Def. Suppl. Br. Supp. Mot. Summ. J. 2-4. The internal affairs doctrine is a conflict of laws principle recognizing that only one state should regulate a corporation's internal affairs or the relevant corporate governance general standard of care, which are matters peculiar to the relationships among or between the corporation and its current officers, directors, and shareholders. *Bluebird Corp. v. Aubin*, 188 N.C. App. 671, 680 (2008). Accordingly, states usually look to the state of incorporation of a business for the law that provides the relevant corporate governance general standard of care. S*ee Atherton v. F.D.I.C.*, 519 U.S. 213, 224 (1997). Corporate internal affairs that "involve primarily a corporation's relationship to its shareholders" include, among other things, the issuance of corporate shares. *In re PHP Healthcare Corp.*, 128 F. App'x 839, 843 (3rd Cir. 2005) (citing Restatement (Second) of Conflict of Laws § 302 cmt. a (1971)); *see also Classic Coffee Concepts, Inc. v. Anderson*, 2006 NCBC 21, ¶ 88 (N.C. Super. Ct. Dec. 1, 2006) (quoting Russell M. Robinson, II, *Robinson on North Carolina Corporation Law*, § 32.05 n.1 (7th ed. 2002)) ("[T]he 'internal affairs' of a corporation [include] such matters as . . . the sale or redemption by the corporation of its shares or other securities . . . ."). Under Delaware law, the "subscription for stock of a corporation, whether made before or after the formation of a corporation, shall not be enforceable against a subscriber, unless in writing and signed by the subscriber or by such subscriber's agent." Del. Code Ann. tit. 8, § 166. Delaware law requires strict compliance with the statutory requirements for the issuance and sale of stock. *Anderson v. Dobson*, No. 1:06-cv-2, 2007 U.S.

the court apply the arguably-more-stringent Delaware statutory requirements governing the issuance of corporate shares to the facts of this Second Claim. Plaintiff argues that notwithstanding the internal affairs doctrine, the arguably-less-stringent North Carolina statutory requirements would apply because the alleged Shareholders Agreement or the Pre-Incorporation Agreement was made in North Carolina.

[49] Plaintiff has been unable to produce the alleged written Shareholder Agreement, and Momentum contends that no such document exists. However, Plaintiff testified that Lemons presented a written Shareholder Agreement to Plaintiff and told her that it was her final ownership paperwork.[61] Plaintiff testified that she reviewed the Shareholder Agreement's terms, confirmed she would receive a fifteen percent (15%) ownership interest and signed and returned it to Lemons.[62] Further, Plaintiff has propounded evidence that Lemons acknowledged the existence of Plaintiff's ownership in Momentum in writing on several occasions.[63] Plaintiff also testified as to statements made by Cotter and Lemons to Plaintiff in March 2007 regarding the agreement for issuance to Plaintiff of shares in Momentum.

[50] The court concludes that upon the evidence forecast here, the result insofar as the Motion is concerned would be the same regardless of whether North Carolina or Delaware law applies. Consequently, with regard to this Second Claim, further analysis of (a) the Delaware statutory requirements, (b) the North Carolina

---

Dist. Lexis 66103, at *38 (W.D.N.C. Mar. 22, 2207) (quoting *Grimes v. Alteon Inc.*, 804 A.2d 256, 260 (Del. 2002)). Corporate minutes and other records do not satisfy Delaware law, which requires "a written instrument evidencing the relevant transactions affecting the issuance of stock." *Grimes*, 804 A.2d at 260 (holding that issuance of corporate stock requires board approval and a writing because issuance of stock "is an act of fundamental legal significance having a direct bearing upon questions of corporate governance, control and the capital structure of the enterprise").

[61] Mancinelli Dep. 31-32.
[62] Mancinelli Dep. 31-32, 42, 48; Mancinelli Aff. ¶ 9.
[63] Lemons Dep. 184-85, Ex. 45, 47, 49

statutory requirements and (c) the relevant conflicts of law principles as to which applies to the facts here is not necessary to resolution of the Motion.[64]

[51]    As such, the court CONCLUDES that there exists a genuine issue of material fact regarding the existence of a written, properly executed Shareholder Agreement or an enforceable Pre-Incorporation Agreement

[52]    Consequently, with regard to Plaintiff's Second Claim, Defendant's Motion should be DENIED.

### Third Claim (Violations of the Wage and Hour Act)

[53]    Plaintiff's third and final Claim is for violations of the North Carolina Wage and Hour Act.

[54]    The North Carolina Wage and Hour Act provides in pertinent part:

> Employees whose employment is discontinued for any reason shall be paid all wages due on or before the next regular payday either through the regular pay channels or by mail if requested by the employee. Wages based on bonuses, commissions or other forms of calculation shall be paid on the first regular payday after the amount becomes calculable when a separation occurs. Such wages may not be forfeited unless the employee has been notified in accordance with G.S. 95-25.13 of the employer's policy or practice which results in forfeiture.

G.S. 95-25.7.

[55]    G.S. 95-25.13 provides that an employer may cause loss or forfeiture of certain wages, including bonuses, only if the employer gives its employees advance written notice of the conditions that may cause such loss or forfeiture.  G.S. 95-25.13(3) (stating that employers must "[n]otify employees, in writing or through a posted notice

---

[64] This Opinion and Order does not constitute a final disposition of this Second Claim, and a further written opinion is not required by Rule 2.1(b) of the General Rules of Practice for the Superior and District Courts.

maintained in a place accessible to its employees, at least 24 hours prior to any changes in promised wages."). Therefore, a bonus will be subject to forfeiture only if the employer "has notified the employee of the conditions for loss or forfeiture in advance of the time when the pay is earned." *Narron v. Hardee's Food Sys., Inc.*, 75 N.C. App. 579, 583 (1985).

[56]  A notification that causes forfeiture of bonus is not sufficient if it does not specify "the conditions for loss or forfeiture." *Kornegay v. Aspen Asset Grp., LLC*, __ N.C. App. __, 693 S.E.2d 723, 735 (2010)  (holding that a memo merely stating that plaintiff employee will get no bonuses until defendant employer "sees fit [and] confident that [defendant] is making money" is not sufficient notification).  Furthermore, any ambiguity in a purported notice is to be resolved in favor of the employee.  *Id.*  In *Kornegay*, the court explained that "regulations relating to the [North Carolina Wage and Hour Act] provide that '[a]mbigous policies and practices [relating to bonuses and commissions] shall be construed against the employer and in favor of the employees.'" *Id.* (*citing* 13 N.C. Admin Code 12.0307(c)).

[57]  The Letter from Lemons to Plaintiff stated that she was "being given a raise to $160,000 beginning January 2008 based on a $130,000 base salary and a $30,000 bonus."[65]  The Bonus was to be paid in $2,500 installments over twelve months rather than a lump sum at the end of the year.

[58]  Plaintiff's January 2008 paycheck contained the monthly Bonus payment of $2,500.  However, after Plaintiff was terminated at the end of February 2008, Defendant withheld $2,500 from her February paycheck, stating that the amount paid in

---

[65] Lemons Dep. Ex. 18.

January was an advance on a future bonus that was forfeited by Plaintiff when she left Momentum.

[59] Defendant argues that the $2,500 was an "advance" on a bonus that Plaintiff had not yet earned.[66] However, the Letter sent to Plaintiff on January 4, 2008 did not explicitly state that the Bonus of $30,000 was an advance.[67] In fact, the Letter simply stated that Plaintiff is "being given a raise to $160,000" and allocated Plaintiff's wages as "a $130,000 base salary and a $30,000 bonus."[68] Since nothing in the Letter states that the $30,000 Bonus was an advance on wages, there exist material issues of fact as to whether the $30,000 Bonus represents work already performed by Plaintiff or is an advance on wages not yet earned.

[60] The court CONCLUDES that there exist genuine issues of material fact with respect to whether Defendant violated the Wage and Hour Act by withholding from Plaintiff the Bonus, an amount totaling $30,000. Therefore, with regard to Plaintiff's Third Claim, Defendant's Motion should be DENIED.

NOW THEREFORE, based upon the foregoing, it hereby is ORDERED that:

[61] Defendant's Motion for Summary Judgment as to the Plaintiff's First Claim (Breach of Contract – Employment Agreement) is GRANTED, and the First Claim is DISMISSED.

[62] Defendant's Motion for Summary Judgment as to the Plaintiff's Second Claim (Breach of Contract – Shareholder Agreement or Pre-Incorporation Agreement) is DENIED.

---

[66] Def. Mem. Law Supp. Mot. Summ. J. 20.
[67] Lemons Dep. Ex. 18.
[68] *Id.*

[63]     Defendant's Motion for Summary Judgment as to the Plaintiffs' Third Claim (Violations of the North Carolina Wage and Hour Act) is DENIED.

[64]     On Friday, January 27, 2012, at 11:00 a.m., at the North Carolina Business Court, 225 Hillsborough Street, Suite 303, Raleigh, North Carolina, the court will conduct a hearing and status conference with all parties to this action for the purpose of setting this matter for trial and determining any remaining pre-trial issues.

This the 12th day of January, 2012.